Elsie J. GOODWIN, Plaintiff-Appellant,

v.

METROPOLITAN BOARD OF HEALTH, J.M. Bistowish, M.D., Director of Health, and Joe M. Strayhorn, M.D., Chairman, Board of Health, in their official capacities, Defendant-Appellee.

Court of Appeals of Tennessee, Western Section, at Nashville.

April 29, 1983.

Application for Permission to Appeal Denied by Supreme Court Aug. 22, 1983.

Susan I. Thomas, Law Student, and Frank S. Bloch, Nashville, for plaintiff-appellant.

John L. Kennedy, Nashville, for defendant-appellee.

NEARN, Presiding Judge, Western Section.

Mrs. Elsie J. Goodwin was terminated from employment as a Home Health Aid with the Metropolitan Board of Health. Administrative hearings were afforded Mrs. Goodwin, but her termination as an employee of the Metropolitan Board of Health was upheld at the hearings. A Writ of Certiorari pursuant to T.C.A. § 27–9–114 was issued by the Chancellor to review the action of the hearing board. In the Petition for Certiorari Mrs. Goodwin also sought additional relief by requesting a Declaratory Judgment to have certain regulations of the Board of Health declared unconstitutional. The Chancellor affirmed the action of the Board and dismissed the claim for Declaratory Judgment. Mrs. Goodwin now appeals to this Court.

The Board gave as reason for the dismissal of Mrs. Goodwin that she had repeatedly violated certain Civil Service Rules and Regulations as follows:

1. Wilful neglect of duty.
2. Violation of the rules of the Civil Service Commission or department.
3. Insubordination.

The departmental rules allegedly violated and referred to above are:

1. Your conduct should always be above reproach. When in a client's home, conduct yourself quietly and efficiently with special regard to client's needs and comfort, and the job you are there to do.
2. Do not promote or discuss religious matters with the client.
3. Do not pay unscheduled visits to client's home.

Counsel for appellant states the issues for review as follows:

1. Whether the Board's decision to fire Mrs. Goodwin, based on her responding to clients' religious questions and

transporting a client to a religious service after hours, violated her rights of free speech, free exercise of religion, and freedom of association.
2. Whether the Board can demonstrate, by a preponderance of the evidence, properly considered, that it would have decided to fire Mrs. Goodwin even in the absence of her constitutionally protected conduct.

Before considering the first issue, we wish to heartily condemn that which appears to us to be a growing practice, i.e., the joinder of an appeal with an original action and the simultaneous consideration of both at the trial level. This Court is of the firm opinion that such procedure is inimical to a proper review in the lower certiorari Court and creates even greater difficulties in the Court of Appeals. The necessity of a separation of appellate review of a matter and trial of another matter ought to be self evident. In the lower Court one is reviewed under appropriate Appellate rules and the other is tried under trial rules. In this Court our scope of review is dependent upon the nature of a proceeding. In this case one matter would be limited by rules of certiorari review and the other would be reviewed under 13(d), Tennessee Rules of Appellate Procedure. Like water and oil, the two will not mix.

The action of the board in regard to the civil service status of Mrs. Goodwin is reviewable in the Chancery Court under the restrictions set forth in T.C.A. § 27–9–114[1], that is, the matter is reviewable in the Chancery Court as one of common law certiorari. This means it was the function of the Chancellor to review the record to determine if there was any material or substantial evidence to support the action of the board. *Lansden v. Tucker,* (1959) 204 Tenn. 388, 321 S.W.2d 795; *Watts v. Civil Service Board of Columbia,* (1980 Tenn.) 606 S.W.2d 274. Such review is actually a ques-

1. 27–9–114. Proceedings involving certain public employees.—(a) No court of record of this state shall entertain any proceeding involving the civil service status of a county or municipal employee when such proceeding is in the nature of an appeal from a ruling of a city or county official or board which affects the employment status of a county or city employee, except such proceeding be one of common law certiorari.

tion of law and not of fact. See *Tallent v. Fox,* (1940 M.S.) 24 Tenn.App. 96, 141 S.W.2d 485. Our scope of review of the action of the Chancellor is no greater than his of the board. See *Watts v. Civil Service Board of Columbia.* Accordingly, in a review of a matter under T.C.A. § 27–9–114 neither the Chancery Court nor this Court determines any disputed question of fact or weighs any evidence.

■ A Declaratory Judgment suit is not one tried before any board or commission. It is tried in a real Court. That trial is subject to the Rules of Civil Procedure and rules of evidence. Ideally and ordinarily, a Declaratory Judgment suit does not invoke disputed issues of fact. Although the Court has the authority to settle disputed issues of fact in Declaratory Judgment matters, such settlement is ordinarily left to other forums. *Hinchman v. City Water Company,* (1943) 179 Tenn. 545, 167 S.W.2d 986.

In the case before us, no new evidence was introduced at the Chancery level. All issues as to Declaratory Judgment and certiorari review were determined on the transcript of the evidence from the board hearing. Since the matters were considered together, how then are we to rule on objections made at the board hearing to the admissibility of evidence? Should it be under strict rules of evidence for trials in Courts of record insofar as the Declaratory Judgment action is concerned or under different, more informal rules governing hearings before nonjudicial bodies, as to the certiorari from the board hearing?

These and other unusual questions are presented by the unnatural joinder of appellate and original jurisdiction in one proceeding. No doubt for this reason the Supreme Court has held that a review of the action of boards and commissions could not be made by Declaratory Judgment. *Brooks v. City of Memphis,* (1951) 192 Tenn. 371, 241 S.W.2d 432; *Coleman v. Blackburn,* (1960) 206 Tenn. 328, 333 S.W.2d 562.

We believe that the continued practice of joining appellate jurisdiction and original jurisdiction in one hearing will lead to procedural chaos bogged down in a quagmire of legal conflicts with reasoned law sinking in the quicksands of confusion.

■ The Chancellor eventually dismissed the Declaratory Judgment aspect of the case, but we hold it should have been dismissed at the very outset. The Constitutional issues attempted to be raised by a separate or alternative Declaratory Judgment action can be raised in the Chancery Court in a review by certiorari from the ruling of the board. Of course, a nonjudicial board has no power or authority to make Constitutional rulings. However, on review as by common law certiorari, the reviewing Court as previously noted, is confined to issues of law. Constitutional issues are generally solely issues of law. In *Brooks v. City of Memphis, supra,* a combination Certiorari—Declaratory Judgment pleading was filed. The Supreme Court held that such combination was unknown to Tennessee law, dismissed from consideration the Declaratory Judgment nature of the proceedings and treated the matter as one on certiorari which alleged the regulation to be so arbitrary, unreasonable and confiscatory as to violate the Tennessee and United States Constitutions. We do likewise and consider this case as one for certiorari review that alleges the regulation violative of the State and Federal Constitutions.

Mrs. Goodwin's position is described in the record as "Homemaker." The duties of a homemaker as a social service worker generally involve lending assistance to the bedridden or semi-invalid in their homes and doing for them that which they cannot do for themselves.

There is evidence in the record to the effect that Mrs. Goodwin, while acting in her official capacity and while performing her official duties as homemaker to one of her clients, advised on the use of a "prayer cloth," began "speaking in tongues," placed her hands upon the client's head and shoulders and began jerking the client's body causing pain and fear in the client. Further, that Mrs. Goodwin left religious tapes

and magazines with the client. In addition, there is evidence that Mrs. Goodwin precipitated religious discussions, some heated, with clients and other social workers engaged in services to clients. Further, one of Mrs. Goodwin's duties was to make lawful purchases for the invalids but she refused to make any purchases of cigarettes as such were against her religion. Further, there is evidence that religious conversations while on duty have been detrimental to the completion of other duties. Further, she has taken clients to church meetings albeit on her own time and not while performing official duties. Further, from Mrs. Goodwin's own testimony there is proof that she will continue to ignore the rule regarding promoting or discussing religious matters. When asked whether or not she would act any differently than she had acted if reinstated in the Homemaker Service, she replied

A. I'm not going to deny the Lord. If, you know, anybody asks me anything about the Lord and I can answer them, I'm going to, because I've been lifted up. If I deny him, you know, that could make me go right straight to hell. You know, there's lots of ways to deny the Lord. And I believe I could go to hell for that just—

Q. To the best of your knowledge, you never brought up the subject of religion to any of your clients?

A. No, not unless they, you know—No, I take that back. Yeah, I'll be honest with you. Can't even remember the lady's name. I talked to her about the Lord one day. It really encouraged her. It helps people to tell them about the Lord. They go to a psychiatrist. They go to alcoholic places, when their only hope sometimes is with the Lord.

■ Some of the foregoing evidence is denied by Mrs. Goodwin. However, our function in certiorari matters is not to weigh the evidence. Accordingly, we find the foregoing to be material and substantial evidence to uphold the finding of the board that the rules were violated. However, it remains to be seen if such evidence is con-stitutionally permissible as grounds for discharge.

■ Before addressing the Constitutional issue, we note that appellant attacks the admissibility of certain of the evidence admitted before the board hearing. First, we hold that neither the technicalities of the Civil Rules of Procedure nor the common law rules of evidence necessarily apply before nonjudicial bodies unless the rules of that body so require. See *Big Fork Mining Company v. Tennessee Water Quality Control Board,* (1981 Tenn.App.M.S.) 620 S.W.2d 515; *L & N Railroad Company v. Fowler,* (1954) 197 Tenn. 266, 271 S.W.2d 188. We believe the rules to be applied by reviewing Courts to these less than legally formal hearings must also be less than those required in legally formal hearings. In reviewing such evidence we are to be guided by a sense of fair play and the avoidance of undue prejudice to either side of the controversy and whether in our opinion the action of the hearing Board in admitting or excluding evidence was unreasonable or arbitrary. See *Consolidated Edison Company v. N.L.R.B.,* (1938) 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126.

■ Appellant contends that certain evidentiary depositions ought to be excluded on the ground of hearsay and for the further reason that Mrs. Goodwin was not permitted to attend the taking of the depositions. Further, complaint is made of the admission of certain of the department records. In reviewing such objections made to evidence before nonjudicial bodies, the United States Supreme Court in *Consolidated Edison v. N.L.R.B., supra,* held that hearsay was admissible in such proceedings if that evidence had rational probative force. However, uncorroborated hearsay or rumor would not constitute "substantial evidence" where the scope of review was limited to a search for "substantial evidence." Therefore, we will ascertain whether the evidence objected to on the grounds of hearsay has rational or probative force.

■ A Mrs. Anderson, the supervisor of Mrs. Goodwin, testified before the Board

that she had received calls from clients asking that Mrs. Goodwin not be sent back to that client. She investigated these and other complaints by speaking to the complaining parties, to other employees of the defendant, and to Mrs. Goodwin. She reiterated practically verbatim what she had previously reduced to writing and filed as her report in the official records of the defendant, which were introduced into evidence. Even in a Court of law we believe the records of the defendant would be admissible in evidence in spite of their hearsay nature. See T.C.A. § 24–7–111; Paine, *Tennessee Law of Evidence*, §§ 78, 79. In addition, because of the incapacity of the clients to attend the hearing, the depositions of those who complained of Mrs. Goodwin's conduct were taken and such testimony corroborated the written reports and the testimony of Mrs. Anderson. Counsel for appellant seeks to avoid the admissibility of the corroborating depositions on the grounds that Mrs. Goodwin was not permitted to personally attend the depositions and confront the witnesses. We have examined this record and are unable to find where any board member or other official ever forbade Mrs. Goodwin to attend the deposition taking. From our reading of the record we can only conclude that the attorney for the defendant forbade Mrs. Goodwin to attend the deposition because of the fear and physical condition of the witnesses. His authority to do so, we doubt. But, in any event, counsel for appellant did attend the deposition taking and fully cross examined all witnesses. No argument is made on appeal that any more, less, or different questions would have been asked by counsel if his client had been present. The only prejudice that is argued is the inference that if his client had been there the witnesses might not have spoken as they did and that his client was deprived of a right to meet her accusers face to face. This is a civil case and we do not believe the right to face one's accusers in civil matters is the same as in criminal matters. See Sixth Amendment to United States Constitution; Article 1 § 9, Tennessee Constitution; Tennessee Rules of Civil Procedure 32.01(3);

Tennessee Rules of Criminal Procedure 15(h); *Ohio v. Roberts*, (1980) 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597. Regardless, no concrete prejudice to the appellant by her exclusion from the deposition has been shown. Further, we do not see that she was prevented from attending the depositions by anyone having authority to exclude her and there was nothing as far as we can tell, to prevent her from attending the deposition, other than tacit agreement of her counsel. Insofar as fairness is concerned, we note that Mrs. Goodwin was allowed to introduce into evidence numerous written, unsworn and uncross-examined statements of other of her clients to the effect that she performed her services satisfactorily. Their hearsay nature is beyond question. The evidentiary complaints are without merit.

Counsel for appellant strongly insists that Mrs. Goodwin's right of freedom of religion, guaranteed by the First and Fourteenth Amendments to the United States Constitution, and Article 1, Section 3 of the Tennessee Constitution have been trampled upon and violated by the rule that "homemakers" are not to "promote or discuss religious matters with the client."

We first note as a matter of undisputed facts that Mrs. Goodwin's clients are elderly and not in good health or they would not be in the program. Agitation and argument would not be in their best interest. Second, we note as a matter of law the constitutional guarantee of freedom of religion is not absolute.

In *Reynolds v. U.S.*, (1879) 98 U.S. 145, 25 L.Ed. 244, the Supreme Court stated "Laws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices." Therefore, there is in the state the limited power to regulate the practice of religion, but "[i]n every case the power to regulate [actions] must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." *Cantwell v. Connecticut*, (1940) 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213. The Supreme Court of the State of Tennessee

has recognized the limited right of the state to regulate the practice of religion. See *Harden v. State*, (1948) 188 Tenn. 17, 216 S.W.2d 708; *State ex rel. Swann v. Pack*, (1975 Tenn.) 527 S.W.2d 99 (handling of snakes); *Gaskin v. State*, (1973 Tenn.) 490 S.W.2d 521 (use of marijuana).

In *Wisconsin v. Yoder*, (1972) 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15, the Court cautioned that while certain religiously grounded conduct might be subject to state restriction "there are areas of conduct protected by the Free Exercise Clause of the First Amendment and thus beyond the power of the State to control." We are aware of the admonition. However, there is no hard and fast rule that we can find by which to measure constitutionally protected religious conduct. It must be decided by the facts and circumstances of the case.

There is one fact and circumstance of this case which distinguishes it from most cases on the subject. This is a government regulation not to apply to all, but to apply to government employees. The same clause that grants to the citizenry in general the right of freedom of religion also forbids the state from establishing a religion, or promoting a religion. First and Fourteenth Amendments, United States Constitution; *Cantwell v. Connecticut, supra.* The "state" is not a human flesh and blood being. Actually, it is a mental concept and creation of man which manifests itself through the actions of its human members. What the state is constitutionally forbidden to do, its individual or collective representatives in the exercise of state business are forbidden to do. A policeman may not unconstitutionally obtain a confession, not because the policeman violates a right, but because the state acting through the policeman has acted unconstitutionally. For the same reason a Judge may not unconstitutionally sentence a citizen or unconstitutionally deprive a citizen of property. Where one acts for the state that action must be limited by the constitutional prohibition applicable to the state.

Therefore, we hold that in compliance with the constitutional mandate, the state has the right to reasonably restrict the religious practices of its representatives in the performance of their state duties.

In *Everson v. Board of Education of Ewing T.P.*, (1947) 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711, the Supreme Court stated

Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another.

Since a state in the performance of its function can act only through its agents, the corollary must be true that the state can enact regulations applicable to its agents that tend to prevent that agent from engaging in a practice which, unless prohibited, would have the state, through its agent, while engaged in official business, show a preference for one religion over another.

The rule applicable in this case does not forbid Mrs. Goodwin or anyone similarly situated from answering a question by a client as to her particular religious preference or affiliation. The rule forbids the promotion of religious discussions and religious discussions themselves. We do not find the rule either unconstitutional or unreasonable. It is not unconstitutional because such rule inhibits state agents while on state business from engaging in that which the state may not constitutionally do. It is not unreasonable because such extra curricular conversations can only inhibit the work to be done. As shown by the circumstances of this case Mrs. Goodwin is of the opinion that she is "hell bound" unless she promotes her particular religion to others when asked about religion while performing her official duties. Further, she has admitted initiating a religious discussion and insists that her practices will continue in spite of the rule.

We have therefore found that there is material and substantial evidence that Mrs. Goodwin was discharged for failing and refusing to comply with a constitution-

al regulation of the agency. Under our scope of review in this case, it is inappropriate and unnecessary to consider further the other acts of Mrs. Goodwin in regard to other regulations. Counsel for appellant insists that we are to examine them all and if we find any other rules unconstitutional, then we are to weigh the reasons Mrs. Goodwin was terminated to ascertain whether the preponderance of the evidence will show whether she was fired more for the violations of other allegedly unconstitutional regulations than for violation of a constitutional regulation. In support of this insistence counsel relies upon the case of *Mt. Healthy School District Board of Education v. Doyle,* (1977) 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471. In our opinion, such reliance is misplaced. True, in *Mt. Healthy* the Court did indicate that it was the duty of the Trial Court to so weigh the evidence and in fact remanded for that purpose. However, the *Mt. Healthy* case was an *original* action filed in the United States District Court for reinstatement and back pay. It was *not* an appeal from the action of a board or commission. As we have previously noted, our scope of review and indeed the scope of review of the United States Supreme Court is different in original actions and appeals from actions of boards or commissions. See *N.L.R.B. v. Southland Manufacturing Company,* (1952 4th Cir.) 201 F.2d 244.

In an original action tried without a jury the Trial Court in this state may weigh evidence on a preponderance scale just as the Trial Court in *Mt. Healthy* was ordered to do. However, in neither the Federal system nor in our state system is a *reviewing* Court in matters such as this permitted to weigh evidence by preponderance. See 5 U.S.C. § 706. It is our function to affirm the action of the *reviewing* lower certiorari Court if there is any material and substantial evidence to support the action of the board for the violation of any Constitutional regulations. We have so found and we affirm.

Costs of appeal are adjudged against appellant.

Done at Nashville in the two hundred and seventh year of our Independence and in the one hundred and eighty-eighth year of our Statehood.

CRAWFORD and HIGHERS, JJ., concur.