STATE of Tennessee on the Relation of James H. BYRAM and Deborah K. Byram; and James H. Byram and Deborah K. Byram, in their own individual capacities, Plaintiffs–Appellants,

v.

The CITY OF BRENTWOOD, Tennessee; Bucky Crowell, Donald D. Brown, the Brentwood Planning Commission; Robert Power; Thomas R. McCoy; Milton Grief; Jae Hill; Wilma Kenney; Barbara Winger; Bill Porth; Richard L. Vaughn; Harold J. McMurtry; and Dave Fulton; and, any and all John Doe(s) and/or Jane Doe(s) subsequently appointed members of the Brentwood Planning Commission necessary to effect a remedy in this cause, Defendants–Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 16, 1991.

Application for Permission to Appeal Denied by Supreme Court March 16, 1992.

Charles J. Blackard III, Blackard, Linebaugh & Tipps, Brentwood, for plaintiffs-appellants.

Michael Call, J. Russell Farrar, Smith, Farrar, Beasley & Creamer, Robert H. Jennings, Jr., Jennings & Tomkins, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiffs/Appellants (hereafter Byrams) filed their complaint in the Circuit Court for Williamson County and sought to have the trial court mandate the issuance of a certified plat or, in the alternative, to find that the defendants/appellees acted arbitrarily, capriciously and unreasonably in withholding approval of a plat for a subdivision to be built on property owned by the Byrams in Williamson County, Tennessee. The Byrams also sought an award of damages they alleged they sustained as a result of the defendants' actions.

The defendants answered, denying all material allegations of the complaint, specifically denying that the Byrams were entitled to a writ of mandamus requiring the issuance of a certified plat, specifically denying that they acted arbitrarily, capriciously and unreasonably in withholding a certified plat, and denying that the Byrams were entitled to any damages.

On 21 February 1990, the trial court ordered the cause set for hearing on 22 March 1990. On 21 March 1990, the defendant City of Brentwood moved to amend its answer by making the answer a "sworn answer." Also, on 21 March 1990, defendant, the City of Brentwood filed a "Notice of Filing Record" of the defendant Planning Commission.

On 21 May 1990, the trial court filed a "Memorandum of the Court" dismissing the Byrams' cause of action. On 19 June 1990, the Byrams filed a Tennessee Rule of Civil Procedure 59 motion for a new trial or to alter and/or amend the judgment. On 14 August 1990, the trial court denied the Byrams' Rule 59 motion. Subsequently, the trial judge disqualified himself and vacated his 14 August order. On 7 December 1990, a second order was entered denying the Byrams' Rule 59 motion.

On 19 December 1990, the Byrams filed a "Notice" that a transcript of the proceedings of 22 March 1990 and 5 April 1990 hearings had been filed with the court. On 4 April 1990, the Byrams filed a "Notice of Appeal."

The "Memorandum of the Court" is as follows:

The Plaintiffs Byram and their predecessor owners will be referred to herein as "Developer". The Brentwood Planning Commission will be referred to herein as the "Board".

Developer contends that on July 5, 1988, a proposed final plat of Wildwood Valley Subdivision, Section Five, conforming in general to the previously approved preliminary plat, was approved by the Board. The proposed final plat reflected a variance previously approved for a road grade of 15% on Panorama Court. The proposed final plat with construction drawings showed Panorama Drive as having a 10% maximum grade as allowed by the subdivision regulations without a variance. Developer contends that this plat was approved by the Board on July 5, 1988, and that Developer is entitled to a Writ of Mandamus to require the plat to be certified for recording in the Register's office. There was no motion to approve the proposed plat without modification. The plat was approved as modified to reflect a road grade variance on Panorama Drive from 10% to 12% to preserve the trees on either side. Prior to the approval as modified by the additional variance, the City Manager said that he did not object to the 12% grade if proper sight distance (200 feet) could be maintained. From a review of the television tapes and the verbatim transcript, it is apparent that no action was taken on July 5, 1988, either to approve or disapprove the unmodified proposed final plat which Devel-

oper insists must be certified for recording. The sense of the Board's action was to approve in principle the final plat which was on the agenda for approval provided trees could, in fact, be preserved by a road grade variance to 12% without violating the 200 foot sight distance requirement. Section Number 111 of the Subdivision Regulations requires that the Board may grant variances only upon "findings" based upon "evidence" and that variances may be granted conditionally. The evidence presented subsequent to July 5, 1988, was with a variance to a 12% grade, no significant preservation of trees could be accomplished without violating the sight distance requirement.

The Court finds that the Board has taken no final action as to the proposed final plat in question. The Court accordingly concludes that the Plaintiffs are not entitled to a Writ of Mandamus, a review under T.C.A. § 27–9–101 or T.C.A. § 27–8–101, nor to damages against the City of Brentwood or the individual defendants.

### ORDER

It is accordingly ORDERED, ADJUDGED, and DECREED that the Petition herein be, and hereby is, dismissed as to all Defendants. Plaintiffs will pay court costs for which let execution issue if necessary.

■ At the outset, we note, as did this Court in *Goodwin v. Metropolitan Board of Health,* 656 S.W.2d 383 (Tenn.App.1983), that it is impermissible to join an appeal from an action of a board with an original action in the trial court. In *Goodwin,* this Court stated as follows:

Before considering the first issue, we wish to heartily condemn that which appears to us to be a growing practice, i.e., the joinder of an appeal with an original action and the simultaneous consideration of both at the trial level. This Court is of the firm opinion that such procedure is inimical to a proper review in the lower certiorari Court and creates even greater difficulties in the Court of Appeals. The necessity of a separation of appellate review of a matter and trial of another matter ought to be self evident. In the lower Court one is reviewed under appropriate Appellate rules and the other is tried under trial rules. In this Court our scope of review is dependent upon the nature of a proceeding. In this case one matter would be limited by rules of certiorari review and the other would be reviewed under 13(d), Tennessee Rules of Appellate Procedure. Like water and oil, the two will not mix.

The action of the board in regard to the civil service status of Mrs. Goodwin is reviewable in the Chancery Court under the restrictions set forth in T.C.A. § 27–9–114, that is, the matter is reviewable in the Chancery Court as one of common law certiorari. This means it was the function of the Chancellor to review the record to determine if there was any material or substantial evidence to support the action of the board. *Lansden v. Tucker,* (1959) 204 Tenn. 388, 321 S.W.2d 795; *Watts v. Civil Service Board of Columbia,* (1980 Tenn.) 606 S.W.2d 274. Such review is actually a question of law and not of fact. See *Tallent v. Fox,* (1940 M.S.) 24 Tenn.App. 96, 141 S.W.2d 485. Our scope of review of the action of the Chancellor is no greater than his of the board. See *Watts v. Civil Service Board of Columbia.* Accordingly, in a review of a matter under T.C.A. § 27–9–114 neither the Chancery Court nor this Court determines any disputed question of fact or weighs any evidence.

*Goodwin,* at 386–387.

The court in the instant case ultimately dismissed plaintiff's mandamus action and action for damages. We hold, however, that these actions should have been dismissed at the outset. 656 S.W.2d at 387.

We therefore deem it unnecessary to discuss any issue having to do with damages and claims invoking the original jurisdiction of the trial court.

The facts out of which this case arose are as follows:

In order to subdivide and develop a tract of land called Wildwood Estates, Section 3, in the City of Brentwood, the Byrams sought plat approval from the defendant Brentwood Planning Commission as required by Tennessee Code Annotated, Sections 6–19–101, *et seq.*, and 13–4–101, *et seq.*, Brentwood Municipal Code, Sections 11–101, *et seq.*, and the Brentwood Subdivision Regulations.

A proposed final plat for Wildwood Estates, Section 3 was the first item on the agenda for the Planning Commission's meeting of 5 July 1988. This plat showed a fifteen (15%) percent grade on Panorama Court, for which the Board had already approved a variance at its April meeting, and a ten (10%) percent maximum grade, which was permitted without a variance under Brentwood's subdivision regulations, on Panorama Drive.

When this item was called for discussion, Thomas S. Nelms, III, counsel for the Byrams, asked the Board to grant a variance for a twelve (12%) percent grade on Panorama Drive. Attorney Nelms made the following statements:

> If we could get a variance to twelve percent, then we could maintain a substantial and significant number of trees along both sides both the north and south boundaries of that roadway. Our slopes on the lots, as indicated on the plat, will be in excess of twenty percent. If we take the road at ten percent, then, you know, it will cause us to have to cut back on the grades roughly two hundred feet on the south properties, which will cause us to lose a significant number of trees.

Mr. Nelms later stated: "I mean its—its conflicting values here, whether or not you want to save the trees to maintain a ten percent grade, or, you know, if you let us have twelve percent, we can save almost or all the trees." He further stated: "[I]f twelve percent will save clearing two hundred feet back on the lot lines and save a lot of trees, then that's something you all need to know."

The Brentwood City Engineer, Mr. Pate, expressed concern about whether the requirement for a 200–foot sight distance or vertical curve could be achieved on the twelve per cent grade sought by the Byrams. Plaintiffs' engineer, Mr. Sawyer, responded: "I think we can manage that." Mr. Pate then replied: "You can still manage. I think that we would need to keep that requirement in there. The site [sic] distance is more of a safety thing that you see over the crest of the curve. We wouldn't want to put a variance on that, I don't believe."

There was also concern expressed by members of the audience about the Wildwood development's effect on the beauty of the hillside, on increased traffic, on increased water run-off and risk of flooding below due to the loss of trees on the hillside, and the need for room for a school bus turn-around. Defendant McMurtry questioned whether the fire chief might have concerns about the twelve percent grade.

After discussing all of these items which related to the proposed final plat, the Commission voted to approve it with the following modifications: a cul-de-sac of sufficient diameter to permit a school bus to turn around, and a twelve percent grade on Panorama Drive in order to protect the trees.

Appellants assert that there is nothing in the record to support the trial court's finding that the "proposed final plat with construction drawings shows Panorama Drive as having a ten percent (10%) maximum grade." Mr. Nelms (the Byrams' counsel) acknowledged at the hearing on 22 March 1990 that the plat in the hands of the Brentwood Planning Commission on 5 July 1988 showed a ten percent grade on Panorama Drive.

At the outset of the Brentwood Planning Commission meeting on 5 July 1988, Mr. Nelms, representing the Byrams, preceded his request for consideration of a variance for a twelve percent grade on Panorama Drive by stating:

> There is one item that we would like to address that is little bit of a deviation from what we considered on our preliminary plat, and that is Panorama Drive, not Panorama Court, now, which you

have already granted the variance on. But Panorama Drive presently is a ten percent grade. Construction drawings indicate that....

There is also evidence which identified two documents offered as plaintiffs' Collective Exhibit 1 as being "the final plat as originally submitted, and the second one is a planned profile of the roadway showing a twelve percent grade and two hundred foot site [*sic*] distance." Mr. Mark C. Jones testified that he "prepared the planned profile grade, the twelve percent grade and the 200 foot site [*sic*] distance.... The reason Mr. Burke's name was on it [was that Mr. Burke] was the first one to do the original drawing," *i.e.*, the ten percent grade and two hundred foot sight distance. He testified on cross-examination that the date appearing on the drawing was 25 July 1988. However, regardless of which of the two documents Mr. Jones was referring to, the testimony establishes that drawings reflecting a twelve percent grade on Panorama Drive were not available on 5 July 1988 and were not prepared until some three weeks after the meeting at which plaintiffs contend their plat was approved.

The Byrams proposed at the August meeting of the Planning Commission that an additional variance to reduce the sight distance requirement from 200 feet to 125 feet with a reduction in the speed limit at the crest of the hill from thirty to twenty miles per hour would save more trees than would be possible with the 200 foot sight distance. No formal action was taken on this proposal at the August meeting, but the Board did request that the Byrams return to the September meeting with drawings showing the number of trees lost with and without the grade variance at both the 200 and the 125 foot sight distances.

On 6 February 1989, the Brentwood Planning Commission denied the Byrams' proposed plat. The only action taken by the Byrams thereafter was an attempt to have the staff of the Planning Commission certify the plat which had been on the Commission's agenda of 5 July 1988. The conditions the Planning Commission set for the 5 July plat had not been met and therefore the staff could not certify the plat as submitted on 10 April 1989. Nothing in the record shows that the City Planner had authority to certify the plat until the Planning Commission had approved the plat. The record shows that as of this date the Byrams have never submitted a plat meeting the required conditions set by the Planning Commission on 5 July 1988.

The Byrams' first issue is: "The Court erred by not mandating that Defendants issue a certified plat to Plaintiffs when final plat approval had been made."

They contend that once final plat approval has been made, the members authorizing such approval have a duty to certify the final plat in order that it may be duly recorded, so as to "afford the proponent of the final plat the ability to go forward with their development." They contend that the certification of an approved final plat is a ministerial duty to be performed by the Brentwood Planning Commission. The Byrams argue that the only evidence before the trial court is that final approval was given on 5 July 1988 for Wildwood Estates, Section 3, that there had been no retraction or revision of the approval, and that no vote was ever taken which would cause the prior approval to be negated, overruled and/or vacated.

■ We are of the opinion that the defendant, Brentwood Planning Commission, did not give final approval of the 5 July 1988 plat for Wildwood Estates, Section 3. The Brentwood Planning Commission gave conditional approval of the Byrams' oral proposal for a variance and modification of the plat on the agenda of the Brentwood Planning Commission's 5 July 1988 meeting. Conditional approval is not equivalent to final approval of the plat without the modifications proposed by the Planning Commission. The Byrams' oral request at the 5 July 1988 meeting for a variance and modification of the plat to reflect a twelve percent grade on Panorama Drive pretermitted discussion, consideration and final approval of the plat without the modifications.

■ The approval of the Byrams' final plat was subject to the condition that a twelve percent grade on Panorama Drive would "save almost or all the trees" that would otherwise be lost if the plat were approved as submitted with a ten percent grade conforming to the Brentwood Regulations but requiring a 200 foot cut on either side of Panorama Drive.

"When a subdivision plan has been approved upon conditions, the failure to comply with the conditions will result in rescission of the approval." *Foley v. Hamilton,* 603 S.W.2d 151, 153 (Tenn.App.1980), perm. app. *denied* 28 July 1980. At the 1 August 1988 meeting of the Planning Commission, the Byrams' engineer reported that even the Byrams' variance for a twelve percent grade would entail a loss of trees and other vegetation and would require a cut at least 150 feet wide to attain the 200 foot sight distance required by Section 502.9 of the Brentwood Subdivision Regulations.

■ So far as this record shows, the Byrams never submitted a plat with a twelve percent grade on Panorama Drive that would save anything close to 200 feet of trees without an additional variance for a reduction in the sight distance requirement. The Planning Commission was under no obligation to approve a twelve percent grade on Panorama Drive, even if the Byrams' plat had been submitted. The trial court properly held that the mandamus was not proper in this case. Mandamus is a discretionary remedy that will issue only where the duty to be performed is ministerial and the obligation to act is peremptory, and plainly defined. *Owen of Georgia, Inc. v. Shelby County,* 648 F.2d 1084 (6th Cir.1981); *Jewell v. Davies,* 192 F.2d 670 (6th Cir.1951). The writ of mandamus is used to "compel an official to perform an act which he has a legal duty to perform." *Bradley v. State ex rel. Haggard,* 222 Tenn. 535, 540, 438 S.W.2d 738, 740 (1969). Mandamus will not lie to control official judgment or discretion. *State ex rel. Ragsdale v. Sandefur,* 215 Tenn. 690, 696, 389 S.W.2d 266, 269 (1965). Where officials have the duty or opportunity to act only after making determinations, evaluations or judgments, they cannot be compelled by mandamus to do the act or do it in a particular way. *Seagle–Paddock Pools of Memphis, Inc. v. Benson,* 503 S.W.2d 93, 95 (Tenn.1973).

■ Here, the Brentwood Subdivision Regulations clearly set forth the detailed procedures and numerous factors that the defendants must follow and consider in deciding whether to approve subdivision plat proposals for certification. It is clear that a considerable amount of discretion is required to balance the respective rights and interests of present and future owners of property proposed for subdivision, present and future neighbors to such property, as well as the health, safety and general welfare of the City of Brentwood. We must, as did the trial court, reject the Byrams' invitation to attempt to control the judgment and discretion of the defendants in this instance.

We have considered each of the issues presented by the Byrams and find them to be without merit.

The judgment of the trial court is therefore affirmed with costs assessed to the appellants and the cause remanded to the trial court for the collection of costs, and for any further necessary proceedings.

CANTRELL and KOCH, JJ., concur.