WAYNE MORRIS, )
)
      Plaintiff/Appellant, )
) Appeal No.
) 01-A-01-9612-CH-00543
VS. )
) Davidson Chancery
) No. 96-705-I
CORRECTIONAL ENTERPRISES )
OF TENNESSEE, TENNESSEE )
CIVIL SERVICE COMMISSION, and )
SUSAN R. WILLIAMS, in Her )
Official Capacity as Commissioner of )
the Tennessee Department of )
Personnel, )
)
      Defendants/Appellees. )

FILED

**October 29, 1997**

**Cecil W. Crowson
Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR



LARRY D. WOODS
P. O. Box 24727
Nashville, Tennessee 37202-4727
     Attorney for Plaintiff/Appellant

JOHN KNOX WALKUP
Attorney General & Reporter

JAMES C. FLOYD
Assistant Attorney General
450 James Robertson Parkway
Nashville, Tennessee 37243-0490
     Attorney for Defendants/Appellees



REVERSED AND REMANDED



BEN H. CANTRELL, JUDGE



CONCUR:
LEWIS, J.
KOCH, J.

# O P I N I O N

The primary question in this appeal, from which all other issues flow, is what is the procedure for determining whether a state employee was in the career service, and thus entitled to civil service protection, or in the executive service serving at the pleasure of his employer. We vacate the judgment of the chancery court and give the appellant employee thirty days to act in accordance with the proper procedure as outlined in the following opinion.

## I.

### Procedural History

The Tennessee Civil Service Commission (CSC) and Correctional Enterprises of Tennessee (CET) denied the appellant an administrative hearing after he was terminated from his job with Tennessee State Industries, a division of the Department of Correction. Appellant then petitioned the Chancery Court of Davidson County for review of the denial pursuant to the Uniform Administrative Procedures Act (UAPA) adding a claim for the infringement on his rights in violation of 42 U.S.C. § 1983. Finding that it lacked jurisdiction to hear the § 1983 claim, the trial court dismissed this portion of Appellant's petition. The court then found that Appellees' decision not to grant Appellant a hearing was not subject to review in the chancery court because there was no "contested case" in this matter and because the law provides that "[t]he final step of th[e] grievance procedure for regular employees shall be a request for review to the [CSC], and all decisions by the [CSC] upon such requests for review shall be final." Tenn. Code Ann. § 8-30-328(a)(7) (1993).

## II.

**Facts**

Wayne Morris had been employed by the State of Tennessee for twenty-seven years when he was terminated from his job in December of 1995. He began his career with the state as a correctional officer. In 1984, he was transferred to Tennessee State Industries, a division of the Department of Correction, where he worked as a Correctional Industries Supervisor II. From 1984 to 1989, Mr. Morris received merit pay increases and promotions becoming first a Correctional Industries Supervisor III and, later, a Correctional Industries Supervisor V. In the latter position, Mr. Morris was Plant Manager of the metal plant at Turney Center -- a state prison industry facility containing a metal plant, a paint plant and a wood furniture plant. At Turney Center, there is an Industries Operations Manager (IOM), a position which Mr. Morris claims was filled by Ken Brown during Mr. Morris' entire tenure as Plant Manager. It is Appellees' view that Mr. Morris' promotion in January of 1995 was to the position of IOM. Contrarily, Mr. Morris asserts that CET and the CSC transferred him from his position as Plant Manager of the metal plant to Plant Manager of the wood furniture plant at which time Mr. Morris was promised a step raise.

Almost a year after the change in Mr. Morris' job, the Acting Executive Director of CET notified Mr. Morris in a letter dated December 5, 1995 that, "[d]ue to continuing quality control problems and the inadequate oversight of plant operations," he was being terminated from employment. When he attempted to utilize the grievance procedures set up by statute for state employees, the Director for Human Resource Management for CET told him that he was not entitled to a hearing because he had been in an executive service position since January 16, 1995. The Director asserted in a letter that the fact that Mr. Morris accepted the raise which he received in January of 1995 indicates that he knowingly accepted this executive service position. When Mr. Morris requested a Level V hearing before the CSC, his request was again denied in a letter stating that his personnel records indicated that he has

been in the executive service since January 16, 1995 and thus CSC has no authority to hear his appeal.

## III.

## The Status of the Employee

The scope of Mr. Morris' rights with regard to his former employment is defined by whether he was Plant Manager or IOM-- each position occupying a different status under the Civil Service Code which divides all positions in the state service between career service and executive service. Tenn. Code Ann. § 8-30-208 (1993). The Tennessee Code provides that a plant manager in a prison industry "shall be a career service employee." *Id.* § 41-22-407(d) (1997). The statute further provides that the Tennessee Rehabilitative Initiative in Correction Board (TRICOR), with the approval of the commissioner of personnnel, "shall have the option of declaring certain management positions, unique to the operations under the control of the board, a part of the executive service and under the exclusive control of the board." *Id.* Mr. Morris does not dispute that the position of IOM is such an executive service job.

Significantly, if, at the time of his termination, Mr. Morris was a career service employee who had completed his initial working test period, or a "regular employee," he should have been given certain procedural protections under the Civil Service Code. *See id.* § 8-30-101(a)(20) (Supp. 1997) (defining "regular employee"). For example, while § 8-30-328 sets up grievance procedures for both permanent and regular employees in the state service, only regular employees are permitted a contested case hearing before the CSC as the final step of these grievance procedures. *Id.* § 8-30-328(7)(1993); Tenn. Comp. R. & Reg. R. 1120-11-.05(5)(b). Moreover, a regular employee in the career service acquires a property right in his position. *Id.* § 8-30-331(a) (1993). With such a right, "no suspension, demotion,

- 4 -

dismissal or any other action which deprives a regular employee of such employee's 'property right' will become effective until minimum due process is provided." *Id.* The statute provides that minimum due process includes written notice of the charges and the opportunity to respond to these charges before any action is taken. *Id.* § 8-30-331(b)(1)-(2). An executive service employee, on the other hand, serves at the pleasure of his employer. Tenn. Comp. R. & Reg. R. 1120-10-.02. While the grievance procedures of § 8-30-328 are available to executive employees, for them the final step of these procedures is before the agency appointing authority and is not a contested case hearing. Tenn. Code Ann. § 8-30-328(a)(7); Tenn. Comp. R. & Reg. R. 1120-11-.05(4).

In support of his position that he was a Plant Manager, and hence a career service employee, Mr. Morris presented his own testimony as well as that of a man who was present at a meeting in January of 1995 where Mr. Morris was offered the job of managing the wood plant. Appellees have presented no evidence to establish that Mr. Morris was the IOM. Rather, they rely on the bare assertion that the grievance procedures do not apply to his termination because he was an executive service employee. In addition, they maintain that the grievance procedures are not available to adjudicate the issue of whether Mr. Morris was a Plant Manager or an IOM at the time of his termination. As stated, the chancery court found that it did not have jurisdiction to hear Mr. Morris' case under the UAPA since there had been no contested case hearing. Finally, the court found that even if Mr. Morris were a civil service employee, the right to appeal a grievance to the CSC is a determination expressly within the exclusive authority of the CSC.

Mr. Morris is confronted with an interesting procedural dilemma: he desires a contested case hearing to resolve the question of his status as a state employee, the resolution of which would determine his right to a contested case hearing in the first place. While Mr. Morris does not dispute that he has no right to a

hearing if he was an executive employee at the time of his termination, he argues that his claim and uncontroverted proof that he was in the career service entitles him to a hearing before the CSC on this issue. We must settle this issue in a manner which, while consistent with the civil service statute, rules, and regulations, does not permit the state to deny an employee civil service protection by merely declaring that the employee was in an executive position.

## IV.

### Judicial Review Under the UAPA

"Title 4, Chapter 5 of the Tennessee Code establishes the procedures for State agencies under the aegis of the Uniform Administrative Procedures Act." *Gonsalves v. Roberts*, 905 S.W.2d 931, 932 (Tenn. 1995). This statute was "designed to clarify and bring uniformity to the procedure of state administrative agencies and judicial review of their determination." Tenn. Code Ann. § 4-5-103 (1991). As for the judicial review of agency decisions, the courts have recognized that the UAPA provides two methods by which such decisions can be reviewed. *See Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 455-56 (Tenn. 1995); *McKissack & McKissack & Thompson Architects & Eng'rs, Inc. v. State Bd. of Exam'rs for Architects & Eng'rs*, No. 86-361-II, 1987 WL 10331, at *2 (Tenn. App. 1987). The first is through a declaratory judgment proceeding which is outlined in § 4-5-225[1] of the Tennessee Code and the second is through judicial review of contested cases pursuant to Tennessee Code Annotated section 4-5-322.

Tennessee Code Annotated section 4-5-225 provides a procedure by which the Davidson County Chancery Court can issue a declaratory judgment to determine "[t]he legal validity or applicability of a statute, rule or order of an agency

---

[1]The Code provision concerning declaratory judgments, formerly found in § 4-5-224, was transferred to § 4-5-225 pursuant to Acts 1997, ch. 162, § 1. *See* Tenn. Code Ann. § 4-5-224 (Supp. 1997) compiler's notes.

to specified circumstances . . . if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the complainant." Tenn. Code Ann. § 4-5-225(a) (Supp.1997). A complainant can petition the chancery court for a declaratory judgment if he "has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order." *Id.* § 4-5-225(b); *see Richardson*, 913 S.W.2d at 456. The declaratory order statute, found in § 4-5-223 of the Code, provides that "[a]ny affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency" at which time the agency shall "[c]onvene a contested case hearing pursuant to the provisions of this chapter and issue a declaratory order which shall be subject to review in the chancery court of Davidson County." Tenn. Code Ann. § 4-5-223(a)(1)(1991).

The second method by which an agency decision can be reviewed in the chancery court is found in Tennessee Code Annotated section 4-5-322(a)(1). This statute provides that "[a] person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review." Tenn. Code Ann. § 4-5-322(a)(1) (Supp. 1997). A "contested case" is statutorily defined as "a proceeding, including a declaratory proceeding, in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by an agency after an opportunity for a hearing." Tenn. Code Ann. § 4-5-102(3) (1991). An example is the contested case hearing to which a regular employee is statutorily entitled as the final step in the grievance procedures under § 8-30-328. Tenn. Code Ann. § 8-30-328(a)(7) & (d) (1993); *see also* Tenn. Comp. R. & Reg. R. 1120-11-.05(5)(b).

It is the latter statute, Tennessee Code Annotated section 4-5-322, through which Mr. Morris sought chancery court review. Finding that the CSC did not

conduct a hearing in this matter and that neither statute nor constitutional provision required a hearing to determine Mr. Morris' legal rights, duties and privileges, the trial court concluded that Mr. Morris' case was not a "contested case" and thus that it had no jurisdiction under the UAPA. In drawing its conclusion, the lower court cited *Mid-South Indoor Horse Racing, Inc. v. Tennessee State Racing Comm'n*, 798 S.W.2d 531 (Tenn. App. 1990), which involved the issue of the UAPA's applicability to the review of licensing proceedings that had resulted in the plaintiff's being denied a license to conduct horse racing. In *Mid-South*, this court did state that such proceedings "will be treated as 'contested cases' only if they contain three essential elements. They must be a 'proceeding' conducted by an 'agency' after the opportunity for a 'hearing.' . . . Proceedings lacking any of these ingredients are not contested cases." *Id.* at 537. In the case before us, appellees assert that since the Commission did not conduct a proceeding after the opportunity for a hearing but rather simply advised Mr. Morris that his dismissal from an executive service position was not grievable, there was no "contested case" as is required by the law for judicial review.

The problem with appellee's argument is that the *Mid-South* case did not turn on the fact that there was no hearing before the agency, but rather on the fact that no hearing was required. The court stated "the licensing proceeding involved in this case was not a contested case because the commission *was not required* to afford Mid-South a hearing before acting on its application." *Id.* (emphasis added). As stated, the UAPA defines "contested case" as "a proceeding, including a declaratory proceeding, in which the legal rights, duties or privileges of a party *are required by any statute or constitutional provision* to be determined by an agency after an opportunity for a hearing." Tenn. Code Ann. § 4-5-102(3) (1991) (emphasis added). The court in *Mid-South* found that state law did not contain a contested case hearing requirement nor was there one arising from a constitutionally protected property interest in a racing license. *Mid-South*, 798 S.W.2d at 539-40. In the case at bar, we must determine whether a statute or the constitution requires that an

employee who claims to have been terminated from a career services position be given the opportunity to be heard before the CSC on this matter.

## V.

## Classification of State Employees Under Civil Service Law

An examination of the civil service statutes and regulations reveals that it is the Commissioner of Personnel who has the authority to determine an employee's status within the state service. Tennessee Code Annotated section 8-30-208(d) (Supp. 1997) states that "[t]he commissioner shall determine equivalent levels for the purpose of assigning positions not specifically addressed in subsection (b) to the career or executive service. Such determination shall be based solely on duties, responsibilities and reporting relationships and shall not be subject to review through any procedure." *See also* Tenn. Comp. R. & Reg. R. 1120-3-.03. In addition, the Commissioner is charged with maintaining the official roster of all state service employees which must show, among other information, the employee's name, title of position, class and any changes in classification. Tenn. Code Ann. § 8-30-202(a)(2) (1993); Tenn. Comp. R. & Reg. R. 1120-2-.16. The CSC, on the other hand, has no role in the classification of state employees. Its duties are limited to those "expressly imposed upon" it in the code which include exercising jurisdiction over "civil service appeals brought pursuant to statute and regulations promulgated pursuant thereto" and acting as "the final step in the grievance procedure provided for regular employees." Tenn. Code Ann. § 8-30-108 (1993).

Nothing in the statutes or rules requires the Commissioner to provide the employee a contested case hearing before making a classification decision.[2]

---

[2]We note that this court recently held that a regular employee who has acquired a property interest in his position has a right to procedural due process when that position is reclassified from career to executive service as this reclassification is an "action which deprives a regular employee of such employee's 'property right'" under Tennessee Code § 8-30-331. *Armstrong v. Tennessee Dep't of Veterans Affairs*, No. 01-A-01-9610-CH00476, 1997 WL 367463 (Tenn. App. 1997). This opinion was based upon the nature of constitutional due process which will not permit a property interest, once

Moreover, the Tennessee Department of Personnel Rules explicitly provide that the "classification of a position" is a non-grievable matter. Tenn. Comp. R. & Reg. R. 1120-11.08(12) (in section entitled "Grievances"). As for disputes over grievability itself, the rules provide as follows: "Disputes over grievability may be resolved by an agency's appointing authority or by the Commissioner. The [CSC] may review such determinations and, at its discretion, take whatever action it deems appropriate." Tenn. Comp. R. & Reg. R. 1120-11-.09(3).

In light of the foregoing, it appears that a state employee cannot obtain a hearing before the CSC regarding his classification. The law is clear that classification decisions are solely within the jurisdiction of the Commissioner of Personnel and that they are not grievable or contestable matters.[3] Because neither statute nor constitution requires the state to provide a hearing for employees who claim to have been terminated from career services positions, the chancery court was correct in its determination that it lacked jurisdiction under § 4-5-322 of the UAPA. *See* Tenn. Code Ann. § 4-5-102(3)(1991); *Mid-South Indoor Horse Racing, Inc. v. Tennessee State Racing Comm'n*, 798 S.W.2d 531, 537 (Tenn. App. 1990). However, as we pointed out, the UAPA provides another method for employees in the state service to seek review of the decisions which affect their employment and it is to this other method Mr. Morris ought have turned.

To avail himself of chancery court review, Mr. Morris should have filed a petition for a declaratory order with the Commissioner of Personnel pursuant to § 4-5-223. In his petition, Mr. Morris could have requested the Commissioner to declare

---

bestowed, to be arbitrarily taken away. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982) (quoting *Vitek v. Jones*, 445 U.S. 480, 490-91 (1980) (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167 (1974))). However, subsequent to *Armstrong*, the legislature seems to have eliminated the constitutional ramifications of reclassification by providing that a career service employee, upon reclassification to the executive service, "shall maintain the position with an incumbent's rights in the career service." Tenn. Code Ann. § 8-30-208(g)(1) (Supp. 1997).

[3] *See supra* note 1.

whether, at the time of his termination, he was a career employee who was entitled to invoke the grievance procedure or whether he was an executive service employee with no such right. As stated above, the declaratory order statue provides that "[a]ny affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency." Tenn. Code Ann. § 4-5-223(a)(1) (1991). The rules and statutes are clear that both the classification and the grievability issues are within the Commissioner of Personnel's primary jurisdiction.

Had Mr. Morris requested a declaratory order, the Commissioner could have convened a contested case hearing under § 4-5-223(a)(1) and issued a declaratory order which would have been subject to review in the Davidson County Chancery Court under § 4-5-322(a)(1). If the Commissioner had refused to issue a declaratory order, Mr. Morris could have filed a petition for a declaratory judgment in the chancery court of Davidson County under § 4-5-225. Finally, in either case, a final judgment of the chancery court would have been appealable to the Tennessee Court of Appeals. Tenn. Code Ann. § 4-5-223 (1991); *see Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 458 (Tenn. 1995) (summarizing the avenues by which a state service employee can obtain judicial review).

Because no Tennessee court has previously set out the proper procedure for a state service employee to obtain an authoritative answer to the question of his classification, we give Mr. Morris thirty days to file a petition for a declaratory order with the Commissioner of Personnel. The judgment of the court below is vacated and Mr. Morris is authorized to proceed in accordance with the procedure as outlined above should he so desire.

## VI.

### The § 1983 Claim

Lastly, we turn to the lower court's dismissal of the appellant's 42 U.S.C. § 1983 claim. In Mr. Morris' original petition, he argued, in the alternative, that Appellees' actions constituted a deprivation and infringement upon his protected rights in violation of 42 U.S.C. § 1983. In his prayer for relief, Mr. Morris requested that he be granted, in addition to a hearing and subsequent reinstatement, "such other relief as is just and proper including an award of costs and reasonable attorney's fees." *See* 42 U.S.C. § 1988(b) (governing the award of attorney's fees in a § 1983 action by providing that "the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorneys' fees as part of the costs"). Finding that it lacked jurisdiction over the this claim, the trial court dismissed that portion of Mr. Morris' complaint involving § 1983.

In its order, the court stated that it was dismissing the appellant's complaint under 42 U.S.C. § 1983 "for good cause shown, as reflected in [the appellees'] Memorandum in Support of Their Motion for Partial Dismissal." While Appellees' memorandum in support of the dismissal motion was not made a part of the record, the parties' briefs indicate that the jurisdictional basis for dismissal involved the joinder of an original action with an administrative appeal. Before addressing this jurisdictional question, we must determine whether Mr. Morris has a federally protected right which would give rise to a § 1983 action before there has been a decision that he was a career service employee.

Section 1983 of Title 42 of the United States Code establishes a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Procedural due process is a right secured by federal law. *See Logan v.*

*Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982) (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)) (in addressing the nature of constitutional due process, the Court noted that "'minimum [procedural] requirements [are] a matter of federal law'"). As stated, Tennessee law only gives employees who are in the career service property rights to their positions. Tenn. Code Ann. § 8-30-331 (1993); *see id.*§ 8-30-331(b) (providing that minimum due process ensures career employees notification of charges against them and a right to a pre-decision discussion with their manager). Since it has not even been determined that Mr. Morris was in the career service, we think it premature for him to raise a § 1983 claim.

Should it be determined by the Commissioner of Personnel that Mr. Morris was indeed a career service employee at the time of his termination, he may desire to join a § 1983 claim with the claim that he was denied the minimum due process to which he was entitled. Because we find that there is no jurisdictional basis for categorically denying the joinder of an original action with an appeal as the court below seemed to do, we will discuss this issue which has already been thoroughly addressed by Tennessee courts.

In *Goodwin v. Metropolitan Bd. of Health*, 656 S.W.2d 383, 386 (Tenn. App. 1983), the plaintiff appealed from an administrative hearing ruling which upheld her termination of employment from the Metropolitan Board of Health. In the same action, the plaintiff sought additional relief by requesting a declaratory judgment to have certain regulations of the Board of Health declared unconstitutional. This court condemned the joinder of these two claims holding that the original action should have been dismissed at the "very outset." *Id.* at 387. The court reasoned as follows:

> This Court is of the firm opinion that such procedure is inimical to a proper review in the lower certiorari Court and creates even greater difficulties in the Court of Appeals. The necessity of a separation of appellate review of a matter and trial of another matter ought to be self evident. In the lower Court one is reviewed under appropriate Appellate rules and the other is tried under trial rules. In this Court our scope of review is dependent

> upon the nature of a proceeding. In this case one matter would be limited by rules of certiorari review and the other would be reviewed under 13(d), Tennessee Rules of Appellate Procedure. Like water and oil, the two will not mix.

*Id.* at 386.

Citing *Goodwin*, the Court of Appeals again reiterated its view that an appeal from an action from a board should not be joined with an original action in the trial court. *State ex rel. Byram v. City of Brentwood*, 833 S.W.2d 500 (Tenn. App. 1991). In *Byram*, the plaintiffs were seeking plat approval from the city planning commission in order to develop a tract of land which the commission denied. On appeal, the plaintiffs "sought to have the trial court mandate the issuance of a certified plat or, in the alternative, to find that the defendants/appellees acted arbitrarily, capriciously and unreasonably in withholding approval of a plat for a subdivision to be built on property owned by the Byrams in Williamson County, Tennessee. The Byrams also sought an award of damages they alleged they sustained as a result of the defendants' actions." *Id.* at 501. The court held that plaintiffs' mandamus action and their action for damages should have been dismissed at the outset and that it was "unnecessary to discuss any issue having to do with damages and claims invoking the original jurisdiction of the trial court." *Id.* at 502.

Most recently, in *Wimley v. Rudolph*, 931 S.W.2d 513 (Tenn. 1996), the Tennessee Supreme Court addressed the issue of "whether [a] plaintiff can combine an original action under 42 U.S.C. § 1983 with a petition for judicial review under the [UAPA] when the sole relief requested under the § 1983 claim is an award of attorney fees." There, the plaintiff exhausted her administrative remedies after the state terminated her Aid for Dependent Children (AFDC) benefits. When she sought chancery court review of the decision that she was ineligible for continued benefits, she also "requested that the court '[a]ssess costs, including a reasonable attorney's fee as provided by 42 U.S.C. § 1988. . . .'" *Id.* at 514. Holding that the plaintiff was

permitted to join these two claims, the court noted that the plaintiff was not seeking remedies under § 1983 which were inconsistent with the remedies in her petition for review. *Id.* at 515. The court stated that "[h]ad [the p]laintiff sought to join a claim for any of those types of relief under [§] 1983 which were inconsistent to remedies available in a petition for judicial review under the Uniform Administrative Procedures Act, the state's estoppel claim would have had merit." *Id.*

The court distinguished *Goodwin* and *Byram* characterizing them both as cases in which the "plaintiffs, pursuing administrative appeals, attempted to join original actions for inconsistent relief with the judicial review provided in the [UAPA]." *Id.* at 516. Significantly, the court articulated "the crucial distinction between the issues in those cases and the one at bar" as follows:

> Here, the basis for plaintiff's petition for judicial review was her allegation that DHS had denied her rights afforded under federal law, specifically rights to AFDC benefits. Upon prevailing upon that claim, plaintiff had, by definition, established a deprivation of rights under color of state law, the very basis for recovery under § 1983. Furthermore, that success entitled her to attorney fees under § 1983 even had she not plead that entitlement.

*Id.* (citing *Bloomingdale's by Mail Ltd. v. Huddleston*, 848 S.W.2d 52, 56 (Tenn. 1992)). *Goodwin* and *Byram*, on the other hand, did not involve allegations of the deprivation of federal rights under color of law. *Wimley*, 931 S.W.2d at 516.

Mr. Morris might, subsequent to the remand of this case, petition for judicial review on the basis that he was denied his right to procedural due process which, like the right at issue in *Wimley*, is a right afforded under federal law. By prevailing on a claim brought under the UAPA, Mr. Morris may show that he is also entitled to recover under 42 U.S.C. § 1983 as the plaintiff in *Wimley* did. Because the case law has emphasized that the relief sought in the original § 1983 action can not be inconsistent with the judicial review under the UAPA, it is significant that Mr. Morris specifically sought only attorney's fees under § 1983 in his complaint. The court in

*Wimley* explicitly held that there was no inconsistency when a plaintiff joined a claim for attorney's fees under § 1983 with her appeal under the UAPA . We therefore clarify that the trial court was in error when it based its dismissal of the § 1983 claim on its lack of jurisdiction over an original action joined with an administrative appeal.

## VII.

## Conclusion

For the foregoing reasons, the decision of the chancery court is vacated. We hold that the proper procedure for a state employee to obtain an authoritative answer to the question of his status is the filing of a declaratory order with the Commissioner of Personnel pursuant to Tennessee Code Annotated section 4-5-223. We direct that Mr. Morris be given thirty days to act in accordance with this procedure. Finally, we conclude that there is no basis for a § 1983 action until there has been a determination that Mr. Morris was a career service employee with a federally secured property interest in his position. However, once the declaratory order action before the Commissioner is final, Mr. Morris may couple a § 1983 claim for attorney's fees with his petition for chancery court review of the issue that he, as a career service employee, was denied due process. Tax the costs on appeal to the state.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE

- 17 -