STATE *ex rel.* NASHVILLE PURE MILK CO. *v.* TOWN OF
ᛋHELBYVILLE *et al.*

(*Nashville,* December Term, 1950.)

Opinion filed May 7, 1951.

James L. Bomar, Jr., and John D. Templeton, both of Shelbyville, for appellants.

Price, Barksdale & Price, of Nashville, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

The State of Tennessee on relation of the Nashville Pure Milk Company, a corporation with its principal office in Nashville, Davidson County, Tennessee, filed its original bill in the chancery court against the Town of Shelbyville, Tennessee, Dr. H. A. Morgan, Jr., Director of the Bedford-Marshall Health Department, and Health Officer of the Town of Shelbyville, and Tom B. Muse, Milk Inspector of said town, praying for the issuance of the writ of mandamus to compel the defendants to issue a permit to the complainants to sell and distribute milk products within the corporate limits of the said municipality and its environs.

The bill alleges that complainant is engaged in processing, selling and distributing milk and other dairy products in Nashville, Davidson County, Tennessee, and other cities and towns in Tennessee, including Shelbyville, and avers that it had a permit to sell its products in Shelbyville prior to the filing of the original bill; that its milk and other products are produced under the highest standards to safeguard the public health and is properly licensed to carry on its business in the City of Shelbyville;

that all milk offered for sale is "Grade A" milk in compliance with standards of the United States Public Health Service which was adopted and enacted as an ordinance of the Town of Shelbyville, but that the defendants without cause, notice or hearing "took up or revoked" the permit previously issued for the sale of milk etc. It is further charged in the bill that the defendant town enacted an ordinance on August 20, 1947, controlling milk inspection entitled the "Unabridged Form of the 1939 Edition of the United States Public Health Service Milk Ordinance" and providing that milk or milk products which are beyond the limits of inspection of the defendant municipality may not be sold unless: ". . . produced and/or pasteurized under provisions equivalent to the requirements of the ordinance; provided the health officer shall satisfy himself that the health officer having jurisdiction over the production and processing is properly enforcing such provisions".

It is further expressly charged in the bill that "complainant's milk and milk products are produced, processed and pasteurized under provisions not only equivalent to but identical with the requirements of the said ordinance of the Town of Shelbyville", and that its products have a health rating of 98.5%. In conclusion the bill charges that the defendants acted arbitrarily and capriciously in denying the permit and refused to satisfy themselves as to inspections made of complainant's products under ordinances of the City of Nashville.

The Chancellor granted the prayer for the alternative writ of mandamus, and, following the filing of an amended and supplemental bill to enjoin defendants from arresting its drivers, the defendants answered denying that a permit had been issued to complainant, but alleged "that it was issued to a local distributor upon certain specific

conditions.'' There was a specific denial that complainant's products had been graded and inspected as required by the ordinance of the Town of Shelbyville.

The answer further alleges "that the defendants were not able to ascertain from their own inspection and examination of the plant facilities of the Nashville Pure Milk Company whether the relator's milk complied with the provisions of the Milk Ordinance of Shelbyville", and that complainant "refused to furnish the records requested." As a further reason for refusing a permit the defendants alleged that they were unable to work out a "reciprocal inspection agreement with Davidson County or the City of Nashville", and failing in this they sought to satisfy themselves whether the health officers in that locality were properly enforcing their health ordinances, and decided that they were not being observed and enforced. The answer makes specific denial of the charge that defendants, in refusing the permit, acted arbitrarily and capriciously. Proof was taken on the hearing; the transcript of the evidence and numerous exhibits, make a record of three large volumes. Much of the evidence is wholly irrelevant to the principal issue in the case.

The Chancellor sustained the bill and ordered a peremptory mandamus to issue and that the injunction be made perpetual. An appeal was prayed and granted to this Court.

The assignments of error complain that the Chancellor's findings and his decree are erroneous for the following reasons: (1) Under the Milk Ordinance and Code in force in Shelbyville the Health Officer had authority to deny relator a permit in Shelbyville "upon the ground alone that it was physically impossible for him to inspect relator's source of supply. (2) The Chancellor erred in

holding that Dr. H. A. Morgan, Jr., City Health Officer of Shelbyville, was estopped from asserting other reasons for his refusal to grant the permit than the one set out in his letter as follows: ". . . since the sources of this milk lie beyond the limits of inspection of this department and since it is beyond the realm of physical possibility to render such service, this decision is made." (3) The Chancellor erred in construing the last paragraph of Section 11 of the Shelbyville Ordinance as imposing a duty upon the Health Officer to approve milk or milk products from distant points without his inspection. (4) It was error to hold that relator is entitled to a permit to sell milk in Shelbyville which relator purchases and ships in from Chicago. (5) It was error for the Chancellor to hold that the Health Officer and the Milk Inspector, Tom B. Muse, did not exercise their discretion in denying relator a permit. (6) The decree is erroneous because the relator, Nashville Pure Milk Company, "is in court with unclean hands."

The foregoing assignments require a brief summary of facts as disclosed by the record and the Chancellor's findings, as well as a reference to the Ordinance which defendants say was erroneously construed.

The two paragraphs of Section 11 of the Milk Ordinance, which is now in controversy, are the following:

"Section 11. Milk and Milk Products from Points beyond the Limits of Routine Inspection.

"Milk and milk products from points beyond the limits of routine inspection of the City of————may not be sold in the City of————, or its police jurisdiction, unless produced and/or pasteurized under provisions equivalent to the requirements of this ordinance; provided that the health officer shall satisfy himself that

the health officer having jurisdiction over the production and processing is properly enforcing such provisions.

．　．　．　．　．　．

"It is suggested that the health officer approve milk or milk products from distant points without his inspection if they are produced and processed under regulations equivalent to those of this ordinance, and if the milk or milk products have been awarded by the State control agency a rating of 90 percent or more on the basis of the Public Health Service rating method."

■ We think it is beyond the realm of controversy that the Nashville Pure Milk Company has for many years been systematically supervised and inspected as required by the State Department of Public Health as well as the Health Department of Davidson County and the City of Nashville. The Chancellor properly held that the inspections made by officers of said county and city were made in compliance with valid ordinances, and that the burden was upon the defendants to prove the contrary, that is that the inspectors and other health authorities have not performed their duty as required by law.

The evidence on behalf of complainant and defendants relates to the methods of grading dairy barns and processing plants by health officers and inspectors in Shelbyville and Nashville areas as well as records kept of such inspections. The Chancellor considered these records, as well as the rating given the complainant, and, by comparing the methods of inspections and the records kept by health officers in Shelbyville and Nashville, found that the defendants had not carried the onus of showing that the Nashville Milk Ordinances were being violated.

It appears from the testimony of a Mr. Owen, who employed the methods used by the United States Public

Health Service Milk Ordinance and Code, that the milk shed around Nashville had a rating of 90.16 per cent and the plant of the Nashville Pure Milk Company had a rating of 98.78 per cent. Mr. Glenn C. Fulkerson, a trained instructor with the State Health Department, and who is sanitarian with the local county health department of Davidson County, and fully qualified to make official ratings of milk sheds as provided by U. S. Public Health Laws, made an official survey in the counties of Bedford, Marshall, Coffee and other counties. He testified for the defendants. His official survey of the Nashville Milk Shed shows the following: "Enforcement methods, 95%, status of raw milk sold to plants, 97.76%; status of pasteurization plants, 99.96%."

The inspections of a very few dairy farms in the Nashville Milk Shed by inspectors of the defendant, could not possibly support the contention of the defendants that the milk ordinances of Nashville and Davidson County were not being enforced. The Chancellor in his opinion upon this issue found the following: "From both the report of Mr. Owen and Mr. Fulkerson the Court is convinced beyond any doubt whatsoever that the milk produced in the Nashville milk shed meets the requirements of the Nashville milk ordinance, the laws of the State of Tennessee and the Department of Health of the State, the County of Davidson and the City of Nashville, and that said milk not only meets the requirements now, but met the requirements at the time the relator was refused a permit to sell its milk in the City of Shelbyville."

We think the record fully sustains the foregoing finding of fact and conclusions of the Chancellor.

Considering the testimony of Owen and Fulkerson as true, the permit should issue to the relator as a matter

of right. The refusal of defendants to issue a permit because they were not able to work out a reciprocal inspection agreement with the complainant appears to have been an afterthought, no mention of it having been made prior to the institution of this suit. Moreover the contention is weakened by the proven fact that Dr. Morgan had stated that relator's milk was sanitary and wholesome and there was nothing wrong with it.

■ Coming now to the question of Dr. Morgan's discretion, (given him by the Milk Ordinance of Shelbyville) it is conceded that mandamus does not lie where a statute or ordinance clothes one with discretion in the performance of official duties. Contention is made that the Chancellor was in error in construing the last paragraph of Section 11 of the Shelbyville Milk Ordinance (copied in this opinion) as imposing a *duty* upon Dr. Morgan to issue the permit; that the said ordinance merely "suggested" that it be issued where the milk products had been given a 90% rating by the State control agency.

■ The governing authority of the Town of Shelbyville exercises its police power pursuant to the express authority of the State. Any ordinance which it might enact relating to the inspection of dairies, and milk processing plants, must be reasonable and not in conflict with the general law. There could be no valid prohibition of the sale and distribution of articles of legitimate commerce within the municipality, which had been approved by duly constituted authority of the State and U. S. Public Health Service. The health authorities of every municipality must of necessity rely upon the rating given certain milk products by State and U. S. Agencies, or health officials of other municipalities, since periodical inspections of milk sheds in foreign jurisdictions cannot be made. The law indulges a presumption

that inspection officers of every locality enforce the requirements of all health ordinances. If health officials and inspectors in a given locality refuse to give any recognition to a rating of milk products by other legally constituted health authorities they could thereby close the avenues of trade and commerce in violation of both State and Federal law.

■ We hold therefore that in using the expression "it is suggested" a permit be issued when a foreign jurisdiction has "a rating of 90% or more" by a State control agency, or by the U. S. Public Health Service, it was contemplated by the governing authority of the Town of Shelbyville that local health officers would comply with it by issuing a permit. Any other construction of the ordinance would be unreasonable and in conflict with Code Sections 526 to 547.13, inclusive. These Sections of the Code provide for the licensing of inspectors of dairies, processing plants, grading of milk products, and confers upon the State Dairy Commissioner and deputies authority to enforce the law. Section 544 makes it a misdemeanor for anyone to hinder the commissioner or his deputies, and for violating the law.

■ Counsel for the defendants contend that the Commissioner has no authority over the health officials and inspectors of the Town of Shelbyville. That this is an erroneous view is shown by Section 547.10 of the Code. It reads as follows:

*"Inspection of dairies and dairy products plants.*—1. At such time as he may deem proper the commissioner shall cause to be inspected all places where dairy products are made, stored, or served as food for pay, and all places where cows are kept by persons engaged in the sale of milk or cream and shall require the correction of all insanitary conditions and practices found therein.

"2. Local Inspection. The governing authority of any municipal corporation may by ordinance provide for the inspection of dairy products sold within its limits, dairy products plants and dairies and dairy herds kept for the production of milk or cream and may prescribe the methods by which dairy products be handled and fix penalties for violation thereof; but no such ordinance shall conflict with any law of this state, unless specifically allowed, or interfere with any power or duty of the dairy commissioner."

The contention of defendants that "relator is not entitled to a permit to sell milk which it purchases and ships from Chicago" cannot be sustained in the light of the proven facts. The milk referred to had a "Grade A" rating by Chicago health officials. It was shipped to Nashville in sealed containers and was again inspected by duly qualified local inspectors and was by them given a "Grade A" rating. There is nothing in the record to show that it does not meet the requirements of Nashville Health Ordinances and the U. S. Public Health Code. Moreover the statute, Code Section 542, authorizes the Dairy Commissioner "to settle disputes, when called on by either buyer or seller of milk" regarding "tests of dairy products", and his finding "shall be taken as a basis of settlement in such disputes." The dispute, if there ever was such between the complainant and Dr. Morgan as to the quality of the milk shipped out of Chicago, should have been submitted to the State Dairy Commissioner for his decision. It furnished no ground for defendants to revoke a permit or refusal to issue one where demanded.

In considering the right of the complainant to the writ of mandamus it is undoubtedly true that such a writ is never authorized to compel a public officer to perform

an act which lies solely within his discretion. The question is often made difficult because of the uncertainty as to whether the required duty is ministerial or discretionary. In *North British & Mercantile Insurance Co.* v. *Craig,* 106 Tenn. 621, 642, 62 S. W. 155, 160, it is said: ''The law is the source of his authority, and he has no discretion beyond that conferred. All of his acts must be within the limits of that authority, and of this the courts must finally judge. Though he may undoubtedly and in every instance construe the law for himself as to discretionary matters actually within the law he cannot, by interpretation, however conclusive to his own mind, bring within his discretion any matter that is not in fact so placed by the law when rightly interpreted by the courts.''

We think the authorities sustain the proposition that where the proven facts clearly show a legal right to exist justice and good conscience require that the writ of mandamus should issue to preserve the right, the relator having no other complete and adequate remedy. *Riesland* v. *Bailey,* 146 Ore. 574, 31 P. (2d) 183, 92 A. L. R. 1207; *Sansom* v. *Mercer,* 68 Tex. 488, 5 S. W. 62, 2 Am. St. Rep. 505; *Baird* v. *Board of Sup'rs of Kings County,* 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. 81.

In 34 Am. Jur., page 859, it is said: ''Where the discretion is as to the existence of facts entitling the relator to the thing demanded, if the facts are clearly proved or admitted, mandamus will lie to compel action according to law, for in such case the act to be done becomes purely ministerial and the duty to perform it absolute.'' To the same effect see 55 C. J. S., Mandamus, Section 63, page 104.

Also in Moses on Mandamus, at page 115, the author says: ''It has been held that the writ of mandamus is

a high prerogative writ, and its being granted or refused, is within the sound discretion of the court. While this, as a general rule is correct, yet, when the relator has a clear, vested, legal right to the thing withheld, *he is entitled to the remedy by mandamus,* although to give him the thing, would not appear to be strictly in accordance with the principles of equity." (Italics ours.)

The following additional authorities support the contention of the relator: *Sheffield Farms Co.* v. *Seaman,* 114 N. J. L. 455, 177 A. 372; *Urban* v. *Taylor,* 188 A. 232, 14 N. J. Misc. 887; and *City of Wewoka* v. *Rose Lawn Dairy,* Okl. Sup., 212 P. (2d) 1056.

In the Sheffield Farms case the same defenses were interposed as in the instant case, viz. (1) that the health board was not able to inspect sources of supply of milk at distant points, (2) that mandamus should not issue to control discretion. It was held by the Court: "City could not justify its arbitrary refusal to grant permit to company to sell and distribute milk on ground that health department had discretion, where, even if such discretion were vested in health department, such discretion would be illegal."

It was also held that the city could not justify its refusal to grant the permit on the ground "that city authorities had no knowledge respecting the quality of company's milk or sanitary condition, under which the milk was produced, handled, or marketed." This latter holding was evidently based upon the undisputed fact that Sheffield Farms held a license from the State authorizing it to sell and distribute its products in New Jersey.

In the case of *City of Wewoka* v. *Rose Lawn Dairy,* supra, the Supreme Court of Oklahoma, in a well considered opinion, dealt with the same questions now before us, and held as follows: "Where city denied plaintiff

milk producer a milk license to distribute its products in city on ground that city was unable to adequately inspect plaintiff's facilities and its milk shed area, although state control agency had awarded plaintiff a rating of 92.4 per cent on basis of public health service rating method and city ordinance provided that if milk products had been awarded a rating of 90 per cent or more on basis of such rating method they could be approved by health officer without inspection, denial of license to plaintiff was an abuse of discretion, and writ of mandamus properly issued to compel issuance of license.''

The only factual difference in the above case and the one at bar is that the rating in Oklahoma was by a ''state control agency'', whereas in our case the rating was by the City of Nashville, inspections being made by qualified health officers pursuant to an ordinance which is almost identical with the ordinance of Shelbyville. The refusal of the defendants to issue relator the permit as requested while not contumacious yet it was wholly unwarranted and is held to be an abuse of discretion.

We are unable to find merit in the assignment of error that the complainant's bill should have been dismissed because ''it was in court with unclean hands.'' The contention is based upon the theory that complainant was selling and distributing milk in Shelbyville in violation of the milk ordinance after its permit had been revoked; that it was thus guilty of a fraud. If we should concede that it was guilty of a wrongful act in making such sales there is no showing that defendants suffered any injury thereby. ''If the alleged wrongful conduct of the complainant appears not to have injured, damaged, or prejudiced the defendant, the maxim may not be successfully invoked''. *Nolen* v. *Witherspoon,* 182 Tenn. 333,

339, 187 S. W. (2d) 14, 16. See also *Overton* v. *Lewis,* 152 Tenn. 500, 279 S. W. 801.

The several assignments of error are overruled, and the Chancellor's decree is affirmed.

All concur.