STATE OF TENNESSEE ex rel. JOHN D. RAGSDALE, Appellee,

*v.*

W. C. SANDEFUR, Secretary Metropolitan Employees Benefit Board, and Hugh Mott, Metropolitan Treasurer, Appellants.

389 S.W.2d 266.

(*Nashville,* December Term, 1964.)

Opinion filed April 7, 1965.

GILBERT MERRITT, JR., ROBERT B. PURYEAR, III, Nashville, for appellants.

ROBERT H. JENNINGS, Nashville, for appellee.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

This is a mandamus suit brought by complainant, John D. Ragsdale, against defendants, W. C. Sandefur,

Secretary to the Metropolitan Employees Benefit Board, and Hugh Mott, Metropolitan Treasurer, seeking an order to compel the defendant, Sandefur, to enter complainant's name on the pension rolls of the Metropolitan government and to issue a warrant in payment of his pension granted complainant on October 14, 1963, effective November 1, 1963; and to require the defendant, Mott, to countersign the warrant.

The facts are, as alleged in the bill, complainant had been an employee of the Fire Department of the City of Nashville from June 1927 until the first Monday in April, 1963, at which time the Metropolitan charter became effective, and continued in that service with the Metropolitan government until November 1, 1963.

On October 3, 1963, complainant made application for retirement and pension benefits effective as of November 1, 1963. Complainant appeared before the Metropolitan Employees Benefit Board on October 14, 1963, and after a full hearing, the Board granted the application and fixed complainant's pension in the sum of $500.00 per month effective November 1, 1963.

On November 14, 1963, complainant made demand upon Sandefur that he enter his name upon the pension rolls and that payment of his pension as ordered by the Board be made. Sandefur refused to honor the demand.

Complainant filed the original bill on November 21, 1963, and prayed that an alternate writ of mandamus issue requiring the defendant, Sandefur, to enter his name on the pension rolls, issue him a warrant, and the defendant, Mott, to countersign the same.

The Chancellor granted the prayer of the bill and caused an alternate writ of mandamus to issue as to both defendants.

Defendants by their answer admitted the factual allegations of the bill. They averred, however, that complainant's salary while employed by the City of Nashville was $9,000.00 per annum until January 1, 1963, three months prior to the effective date of the charter of the Metropolitan government, at which time his salary had been increased to $12,000.00 per annum by the Council and Mayor of the City.

It is then averred by paragraph five of section 20.17 of the Metropolitan charter the Board had no authority to grant complainant a pension of more than $375.00 per month, or one-half of his salary per annum as of March 31, 1962, which was $9,000.00.

Paragraph 5 of Section 20.17 of the charter provides:

"Where compensation for a Metropolitan office is fixed by this Charter, a person holding specified office in the City or County government is appointed thereto by this Charter and the compensation herein fixed is an increase over the compensation which such County or City office was entitled to receive as of March 31, 1962, then the obligation of the Metropolitan Government for retirement benefits to such person shall be based upon the compensation paid him by the County or City as of March 31, 1962, until such person shall have served as a Metropolitan officer for five (5) years or more. After said five (5) years, such benefits shall be based upon compensation paid by the Metropolitan Government."

The complainant filed an amended and supplemental bill in which he averred, among other things, the defendants could not collaterally attack the final decision of the Board; and that the act of issuing, signing and countersigning the warrant were ministerial duties and not discretionary.

The defendants answered and reiterated the Board had no authority to grant or fix complainant's pension at more than $375.00 per month or $4,500.00 per annum under Section 20.17 of the Metropolitan charter; and, therefore, the Board's action in fixing his pension at $500.00 per month was illegal and void.

The matter was heard by the Chancellor upon the pleadings, exhibits, briefs and argument of Counsel.

The Chancellor entered a decree in which he held the Board was, "vested with the power, authority, and discretion to determine the rights of Metropolitan employees to receive retirement benefits, and said Board having determined the benefits to which John D. Ragsdale is entitled, and no review of its action having been sought, as required by law, its decision is final; and the court being further of the opinion that the answer of the defendants fails to show cause * * *."

Accordingly, the Chancellor ordered a peremptory writ of mandamus to issue commanding defendants to sign and countersign the warrant in the amount as ordered by the Board.

Defendants have appealed to this Court and have assigned as error the action of the Chancellor in holding the action of the Board, unappealed from, was final and was not subject to a collateral attack by the defendants.

■ The writ of mandamus will not lie to control official judgment or discretion, but it is the proper remedy where the proven facts show a clear and specific legal right to be enforced, or a duty which ought to be and can be performed, and relator has no other specific or adequate remedy. *State, ex rel. Motlow v. Clark,* 173 Tenn. 81, 114 S.W.2d 800 (1938); *State v. Wilbur,* 101 Tenn. 211, 47 S.W. 411 (1898); *Lynn v. Polk,* 76 Tenn. 121 (1881); *Peerless Const. Co. v. Bass,* 158 Tenn. 518, 14 S.W.2d 732 (1929); *Taylor v. Waddey,* 206 Tenn. 497, 334 S.W.2d 733 (1960); *State ex rel. Nashville Pure Milk v. Town of Shelbyville,* 192 Tenn. 194, 240 S.W.2d 239 (1951); *Lamb v. State,* 207 Tenn. 159, 338 S.W.2d 584 (1960).

Thus, the question for our determination is whether defendants were clothed with a discretionary judgment to determine the legality of the Board's action and refuse to perform their duty on the ground the action was in their judgment illegal, or the signing and countersigning the warrant were ministerial duties defendants were bound to perform.

Section 13.03 of the Metropolitan charter authorizes the Board to employ a secretary. Sandefur was so employed and acting as such. Section 13.11 of the charter provides for pension payments to be made "only on order of the Board by a warrant to be signed by a person designated by the Board * * *." Sanderfur was so designated by the Board.

■ It was his duty to sign the warrant, at the direction of the Board, his employer, as the designation to perform the act vested in him no discretion and his duty of performance was therefore ministerial. Thus, his defense, the Board's action was illegal, was insufficient as a matter of law to the petition for the writ of mandamus to compel

him to perform a ministerial duty. *Peerless Const. Co. v. Bass,* supra; 34 Am.Jur., Mandamus, Section 87, page 876.

■ The action of the Board in granting the pension was of a judicial character and was not subject to review by the Board's secretary whose duties are ministerial. *Peeler v. State, ex rel.,* 190 Tenn. 615, 231 S.W.2d 321 (1950); *State ex rel. Caldwell v. McQueen,* 178 Tenn. 478, 159 S.W.2d 436 (1942).

Section 8.106 of the Metropolitan charter created the office of Treasurer and provides that he ''shall supervise and be responsible for the custody and disbursement of all . funds belonging to the Metropolitan government and all funds handled by Metropolitan government officers as agents or trustees, except as otherwise provided in this charter or by ordinance or general law not inconsistent with this charter.''

Section 13.09 of the charter provides in part: ''It shall be the duty of the Employee Benefit Board to assume jurisdiction over, to administer, and to interpret the provisions of the retirement plans listed above in this Section 13.09; * * * and to exercise the duties granted the Board in Section 13.05 of this charter with respect to such retirement plans * * *.''

Section 13.05 defines the duties of the Board and in part provides: ''(d) Construe any employee benefit plans adopted by the Metropolitan government as well as any retirement plan listed in Section 13.09(a) * * * (c) of this Article, and to determine all questions that may arise thereunder, including questions relating to the eligibility of any person employed by the Metropolitan government to become a member of any such employee benefit plan

and the amount of benefit to which such person, or any member of a retirement plan listed in Section 13.09(a)-(c) of this Article may become entitled thereunder.''

The funds of the employees' Benefit Board are maintained separately from the other funds of the Metropolitan government. Section 13.11 of the charter also provides: ''Payments from such funds shall be made only on order of the Board by a warrant to be signed by a person designated by the Board and to be countersigned by the Metropolitan Treasurer. The Metropolitan Treasurer shall submit to the Board monthly financial reports and such other reports as the Board may require.''

■ It is obvious from the foregoing provisions of the charter the Board and not the Metropolitan Treasurer has jurisdiction to construe employee benefit plans, Section 13.11 of the charter designates the Board as the proper body to order payment of pensions. This Section also provides the Board shall order the warrant to issue and shall designate a proper person to sign it on behalf of the Board and does not provide the Board shall submit a voucher requesting payment. It is the duty of the Treasurer to countersign the warrant.

■ ■ Countersign means to sign in addition to another's signature, to attest the authenticity of that signature. Webster's New Collegiate Dictionary; Webster's New International Dictionary, Second Edition. Webster's New World Dictionary, College Edition, defines the word to mean: ''A signature added to a previously signed piece of writing in order to authenticate or confirm it.'' Therefore, Section 13.11 does not vest in the Treasurer the discretion of determining the validity of an employee's retirement benefit or grant to the Treasurer the

authority to review the action of the Board in granting the benefit. The Treasurer's duty to countersign the warrant is a ministerial act.

However, as we understand appellants' brief, they take the position the Board's action in granting complainant a pension of $500.00 per month or $6,000.00 annually is void in view of paragraph 5 of Section 20.17 of the charter.

Complainant, on the other hand, insists by virtue of item (q) of Section 6-3711 of Title 6 of T.C.A., he is entitled to a pension of $500.00 per month notwithstand-and paragraph 5 of Section 20.17 of the Metropolitan charter. Title 6, Sections 3701 et seq., of T.C.A. provide for the consolidation of municipal and county governments. Section 6-3711 provides: "The proposed metropolitan charter shall provide: (q) For the maintenance and administration of an effective civil service system, and also for the consolidation of county and city employees' retirement and pension systems and the regulation of such consolidated system, provided that nothing in this chapter or in a charter adopted pursuant to it shall impair or diminish the rights and privileges of the existing employees under civil service or in the existing county and city employees' retirement and pension systems."

■ ■ We think the Board has the jurisdiction to construe the provisions of the charter relative to retirement benefits of metropolitan employees and fix or find the amount an employee is entitled where, as here, a controversy as to the amount exists. This being true, the finding of the Board cannot be said to be void. It is at best erroneous and voidable.

Appellants rely upon the case of *Brooks v. McCoy,* 192 Tenn. 586, 241 S.W.2d 579 (1960) for their position the decisions of administrative boards are not protected from collateral attack.

The facts of the Brooks case are an officer took possession of Brooks' automobile under the pretense he was transporting intoxicating liquors and turned it over to the Department of Finance and Taxation. Brooks made written claim to the car to the Commissioner of that Department and requested a hearing. The Commissioner sold the automobile to McCoy without granting Brooks a hearing.

Brooks approached McCoy about the car and was told he had sold it to a man by the name of Cobb, an employee of McCoy.

Brooks brought a replevin suit against McCoy and Cobb in the Chancery Court. The Commissioner demurred on two grounds. The first ground of the demurrer was the replevin suit could not be maintained because the statute authorizing the confiscation of vehicles used in transporting illicit liquors provided the owner an exclusive remedy for repossession of the vehicle. The second ground asserted the replevin suit was a collateral attack on the judgment of the Commissioner and not permissible.

The Chancellor overruled the demurrer because the bill alleged the Commissioner had failed to give Brooks a hearing.

On appeal, this Court sustained the Chancellor and held the title to the car remained in Brooks because the conditions of the statute by which confiscation might be accomplished had not occurred in that Brooks had not been afforded a hearing.

In disposing of the second ground of the demurrer, the Court said: "In support of that insistence reference is made to some of the decisions wherein there is stated or re-stated the rule governing collateral attack upon judgments or decrees of courts of general jurisdiction. The fallacy of this insistence is in the assumption that the Department of Finance and Taxation is a court." The Court then pointed out that the Department was an administrative board only and the Commissioner was an administrative official.

It is obvious, under the facts of this case, the foregoing is mere dicta. The judgment was absolutely void in the face of the statute and would have been so if a court of general jurisdiction had acted in a like manner in a similar situation.

■ A void judgment or decision, whether it be by a court of general jurisdiction or an administrative board or official, is subject to attack from any angle.

■ If it can be said a voidable decision of an administrative board can be collaterally attacked in all cases by way of a defense to a suit for the enforcement of the order or decision or by suit not in the nature of a direct attack, then we fail to see how an order or decision of a board would ever become final and not subject to review by the courts, unless so expressly provided by law; although, as here, the orderly processes for the review of such decisions are ignored.

In the case of *Longinette v. Shelton,* Tenn.Ch.App., 52 S.W. 1078 (1898), it was held a funding board empowered to pass upon the genuineness of bills issued by the Bank of Tennessee and the board's rejection of a bill as spurious was conclusive in favor of the State, unless the

board's action was reversed in direct proceedings by certiorari for its review. We quote from the opinion:

"We do not think that the acts of the legislature which we have under consideration undertook to make, or did make, a court out of the funding board, or made the members of that board 'judges' in the technical sense of that term. They were constituted merely a board or governmental agency, which necessarily exercised some judicial functions in performing its duty. As other similar bodies, its acts are prima facie correct, and must stand until corrected, if erroneous, in the proper legal method. That method would be by the writ of certiorari."

In 73 C.J.S. Public Administrative Bodies and Procedure sec. 146, page 479, it is said:

"The order or determination of an administrative body acting with jurisdiction and under authority of law is not subject to collateral attack in the absence of fraud or bad faith."

In 2 Am.Jur., (2d), Administrative Law, Section 493, page 299, it says:

"Attempts to question, in a subsequent proceeding, the conclusiveness of a prior decision of an administrative agency have often been rejected by the courts on the ground that, like the judgment of a court, a determination made by an administrative agency in its judicial or quasi-judicial capacity is not subject to collateral attack, at least where the administrative agency has acted within its jurisdiction, the determination is not void upon its face, and the ground of attack asserted relates to mere error or irregularity which is not jurisdictional * * *."

We are of the opinion the Chancellor did not err in holding the answer of the defendants failed to show cause. Appellants' assignment of error is overruled and the decree of the Chancellor is affirmed.

The cause is remanded to the trial court for such orders as may be necessary for the enforcement of the Chancellor's decree.