FILED
07/14/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 24, 2017 Session

## THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY v. RSF INVESTORS, LLC

**Appeal from the Circuit Court for Davidson County**
**No. 13C-2264      Kelvin D. Jones, Judge**

_____

### No. M2016-02221-COA-R3-CV

_____

This appeal arises from an enforcement action by the Metropolitan Government of Nashville and Davidson County ("Metro") against the owner of a restaurant located within the Broadway Historic Preservation District in Nashville, Tennessee. Metro commenced the action to require the owner to comply with Metropolitan Code of Laws (M.C.L) § 17.40.410 and the preservation permit the Metropolitan Historic Zoning Commission ("the Commission") issued upon the application of the owner. Following discovery, the parties filed cross motions for summary judgment. The trial court granted Metro's motion and denied the owner's motion. The order required the owner to remove the portion of the installation that did not comply with the permit. This appeal followed. The owner raises three principal issues. It contends: (1) the glass panels it was ordered to remove do not fall within the purview of the Commission; (2) Metro cannot enforce a permit that has expired; and (3) summary judgment is inappropriate because material facts are in dispute. Metro contends we lack jurisdiction to hear this appeal because the appeal is untimely. We have determined the appeal is timely, and the issues raised by the owner are unavailing. Therefore, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Steven J. Meisner, Nashville, Tennessee, for the appellant, RSF Investors, LLC.

Lora Barkenbus Fox and Patrick J. Bradley, Nashville, Tennessee, for the appellee, The Metropolitan Government of Nashville and Davidson County.

**OPINION**

The defendant, RSF Investors, LLC ("RSF"), owns real property located at the corner of Fifth Avenue South and Broadway in downtown Nashville, Tennessee, where it operates a restaurant and bar, Rippy's Smokin' Bar and Grill ("Rippy's"). The building is located within the Broadway Historic Preservation District where the Metropolitan Historic Zoning Commission ("the Commission") has jurisdiction "to insure the ongoing preservation of structures of historic value." M.C.L. § 17.36.100. Prior to 2010, the building was one story. In 2010, RSF commenced construction of a rooftop addition without applying for a preservation permit from the Commission. On March 5, 2010, the Historic Zoning Administrator sent a letter to RSF requesting the removal of the addition or that RSF immediately apply for a preservation permit so the Commission could determine if the addition complied with the Broadway Historic Zoning Overlay. In May 2010, RSF applied for a preservation permit; however, it did not halt construction.

When RSF's application for a permit came on for hearing before the Commission in July 2010, members of the Commission expressed concern with the appearance of the canopy that RSF had constructed. Specifically, they stated that it did not comport with the architectural character of the neighborhood, and they wanted a design that would blend in with the first floor of the building. Having anticipated this concern, RSF presented an architectural design for the second floor canopy that divided the second story into bays that matched the first-floor bays and concealed the canopy with a wooden fascia. The architectural design as reflected on the plans was well received by the Commission members; however, RSF also requested permission to install clear, drop-down plastic panels inside the canopy frame for use during inclement weather. As the representative for RSF explained:

> We feel that now that the canopy is hidden from view that there's no harm to the district in being able to drop down see-through plastic on the side panels during inclement weather only…. And the drop-down plastic … would be inside the canopy frame and then rolled down and snapped to the floor. It sits two feet … inside from the Broadway façade and about a foot and a half from the 5th Avenue façade. So it's certainly more inward from the façade than anything else, any other feature.

Following a discussion, the Commission agreed to issue a permit approving the architectural design as reflected on the plans but the Commission denied the request to install see-through plastic panels. As the Commission members explained, they wanted specifics about the design and the materials that RSF would use to enclose the canopy before considering such a request.

At the conclusion of the hearing, the Commission issued a permit approving the architectural design as reflected on the plans; however, the permit specifically precluded the following: "The canopy and/or the openings shall not be enclosed without review and permit from the [Commission]." RSF did not appeal the Commission's decision and, as permitted, RSF completed the improvements to the second story canopy by dividing it into bays that matched the first-floor bays and by concealing the canopy with a wooden fascia. However, RSF also hung clear plastic panels inside the canopy frame in direct contravention of the permit.

Upon learning of the installation of the plastic panels, the Commission sent a letter notifying RSF that the unauthorized plastic panels must be removed. RSF responded by removing the plastic panels. Thereafter, the Commission inspected the building and found it in compliance with the permit.

Several months later, and more than a year after the Commission issued the permit, RSF re-installed the plastic drop-down panels. Upon learning that the plastic panels had been re-installed, the Metropolitan Government of Nashville and Davidson County ("Metro') commenced this action by filing a civil warrant in General Sessions Court seeking an injunction requiring the removal of the plastic panels. The General Sessions Court found in Metro's favor and permanently enjoined RSF from "using plastic, vinyl, or any other tarp or covering at the subject property in violation of Metro Code." RSF appealed that ruling to the Circuit Court of Davidson County.

In the interim, RSF replaced the plastic panels with clear glass panels that it attached to a track installed a few inches inside the canopy frame. Metro then filed an amended complaint alleging the glass installation violated the preservation permit. RSF filed an answer asserting, *inter alia*, that the Commission lacked jurisdiction to regulate the installation of the interior glass panels.[1]

Following discovery, Metro filed a motion for summary judgment contending that RSF violated the permit by enclosing the canopy with the glass panels. In support of its motion, Metro relied on several exhibits including, *inter alia*, a copy of the preservation permit issued to RSF, a transcript from the July Commission meeting, and a copy of the Broadway Historic Preservation District Design Guidelines ("the Historic Preservation Guidelines"). Metro relied on the transcript from the July hearing to show that RSF acknowledged the Commission's authority to regulate the interior panels when it requested permission from the Commission to install them. As for the jurisdictional issue, the Commission noted that when it rejected the request, as clearly stated in the preservation permit, RSF had the right to appeal that decision but did not; therefore, the issue was res judicata.

---

[1] RSF refers to the glass installation as "glass curtains." We will refer to them as "glass panels."

RSF responded by filing a cross motion for summary judgment in which it asserted three grounds for dismissal of the complaint. RSF argued that the Commission did not have the authority to regulate the interior of RSF's building, and the glass panels were within the interior of the building. RSF contended that its installation of the glass panels did not violate the permit because the permit, which was for one year, had expired prior to the installation. RSF also argued that the panels did not form an enclosure as defined by the construction trade or the Metropolitan Code of Laws; thus RSF did not violate the permit.

In support of the last argument, RSF submitted an affidavit from Steve DiLeo, the project manager responsible for the glass installation, and the deposition of Byron Hall, the Chief Inspector for Metro Codes. Mr. DiLeo testified that the glass panels were installed on the interior of the structure and did not "enclose" the second floor as that term is generally used in the commercial construction trade in Tennessee. Mr. Hall, likewise, testified that the installation was not affixed to the exterior of the structure and did not "enclose" the second story according to the definition followed by Metro Codes. However, Mr. Hall also testified that Metro Codes did not conduct inspections for the Commission: "We don't do Historic inspections, no. Our inspections come along with our permits, which are mainly structure and … we're … looking at structure, period." Similarly, Robin Zeigler, the Metro Historic Zoning Administrator, testified in a deposition submitted by RSF that the Commission used its own design guidelines and did not use the definitions provided by Metro Codes, despite the fact that the Commission's guidelines did not define "enclosed."

As for RSF's argument that the Commission lacked the authority to regulate the interior of the RSF structure, the Commission noted that RSF submitted to its jurisdiction by applying for the permit in 2010. Moreover, if RSF was aggrieved by the Commission's order and the restrictions in the permit, RSF was required to appeal the Commission's decision within sixty days of the entry of the order, and it did not. Because the Commission's decision became final, that decision could not be collaterally attacked.

In an order entered on May 26, 2016, the trial court granted Metro's motion for summary judgment, finding the Commission's decision to be final and thus immune from RSF's claim that the Commission "did not have the authority to regulate the enclosures of the second story openings and/or canopy." The trial court also determined that it was "self-evident that the current installation of glass, as well as the previous installation of plastic, encloses the openings and/or canopy on the second story," in violation of the permit. The trial court required RSF to remove the glass panels, and it permanently enjoined RSF from re-installing the panels unless and until it obtained the appropriate permit from the Commission.

RSF timely filed a motion to alter or amend the May order, arguing that the trial court should remove the permanent injunction language from its order since Metro had not mentioned a remedy in its summary judgment motion nor was it discussed at the motion hearing. RSF also argued that the order should be amended because the trial court erred: (1) by enforcing the permit despite the fact that it had expired before RSF installed the plastic panels; and (2) by summarily dismissing the case since it was disputed whether the installation constituted an enclosure in violation of the permit.

On July 22, 2016, the trial court entered a second order that also granted summary judgment in favor of Metro but the relief granted to Metro was different from that stated in the May order.[2] Later that day, Metro filed a Motion and Memorandum of Law for Mandatory and Permanent Injunction.

In a third order entered on August 4, 2016, the court ruled on RSF's first motion to alter or amend by decreeing that "the Order entered by the Court on May 26, 2016 is set aside and the Order [prepared by RSF and entered on July 22, 2016] will be entered by the Court."[3] Furthermore, and significantly, the August order expressly stated that "[a]ll other issues raised in [RSF's] Motion are reserved."

On August 19, 2016, RSF filed a motion to alter or amend the July order, arguing, again, that the trial court erred by enforcing the expired permit and by finding that the panels enclosed the canopy. Metro filed a response in opposition to the motion along with a notice that it was striking its motion for a permanent injunction. Following a hearing, the trial court denied RSF's motion to alter or amend.

On September 29, 2016, the trial court entered its fourth and final order granting summary judgment to Metro. The court ruled that RSF could not challenge the Commission's authority to regulate the installation because it failed to timely petition for a writ of certiorari within sixty days of the permit's issuance. The September order also stated that it constituted the trial court's final judgment. RSF filed its notice of appeal within thirty days of the entry of that order.

---

[2] RSF prepared the July 22 order and submitted it shortly after it learned that the court had signed and entered the May 26 order prepared by Metro. The confusion appears to have resulted from the fact that the trial court failed to "hold" Metro's proposed order for three days, as required by Rule 15.03 of the Davidson County Trial Courts to afford RSF time to notify the court if it disagreed with the contents of the order prepared by Metro.

[3] The opening paragraph of the August 4, 2016 order stated, "This cause came to be heard . . . on [RSF]'s Motion to Alter or Amend Order following summary judgment." It appears this order was necessary due to the inconsistent relief awarded to Metro in the "final orders" that had been entered on May 26 and July 22, respectively.

ANALYSIS

RSF presents three issues for our review:

1. Whether the glass panels, which were installed on the interior of the building, are within the regulatory purview of the Commission.

2. Whether the trial court erred in finding that the preservation permit was enforceable more than twelve months after it was issued.

3. Whether the trial court erred in finding, as a matter of undisputed fact, that the glass panels installed on the interior of the building constituted "enclosures."[4]

Metro presents one additional issue, whether this appeal should be dismissed as untimely. Because it presents a jurisdictional issue, we will address this issue first.

## I. TIMELINESS OF THE APPEAL

Metro contends this court lacks jurisdiction to hear this appeal because RSF failed to file a timely notice of appeal. The contention is that RSF filed two Tenn. R. Civ. P. 59.04 motions to alter or amend the court's orders, and the second motion, which relied on the same grounds as the first, cannot extend the time for filing a notice of appeal. We agree that a second motion filed by the same party on substantially the same grounds cannot extend the time for filing an appeal. Nevertheless, Metro filed its motion for injunctive relief that was, in fact, a Rule 59.04 motion to alter or amend a final order, which had been amended in response to RSF's first Tenn. R. Civ. P. 59.04 motion. Therefore, Metro's motion extended the time for filing an appeal a second time. Furthermore, in the order entered on August 4, 2016, in which the court partially granted RSF's first motion to alter or amend, the court stated, "All other issues raised in [RSF's] Motion are reserved." Because the August order did not dispose of all claims or issues, it did not constitute a final judgment from which an appeal as of right could be taken. Based upon these facts and for the reasons explained below, we have determined that the order entered on September 29, 2016 constituted the trial court's final judgment. Because RSF filed its notice of appeal within thirty days of the entry of that order, it was timely filed. As a consequence, we have jurisdiction to hear this case.

The term "judgment," as used in the Tennessee Rules of Civil Procedure, includes any order from which an appeal lies. Tenn. R. Civ. P. 54.01. A party is entitled to an appeal as of right only after the trial court has entered a "final judgment." Tenn. R. App.

---

[4] We have revised the issues presented by RSF by removing the argumentative component of each issue.

P. 3(a). A final judgment is a judgment that resolves all the claims between all the parties, "leaving nothing else for the trial court to do." *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). An order that adjudicates fewer than all the claims between all the parties is subject to revision at any time before the entry of a final judgment and is not appealable as of right.[5] Tenn. R. App. P. 3(a); *In re Estate of Henderson*, 121 S.W.3d at 645.

Tenn. R. App. P. 4(a) requires an appellant to file a notice of appeal within thirty days following the entry of the final judgment. Pursuant to Tenn. R. Civ. P. 59.01, the filing of the following post-judgment motions will extend the thirty-day deadline: (1) a Tenn. R. Civ. P. 50.02 motion for judgment in accordance with a motion for directed verdict; (2) a Tenn. R. Civ. P. 52.02 motion to amend or make additional findings of fact; (3) a Tenn. R. Civ. P. 59.02 motion for a new trial; and (4) a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment. "If one of the post-judgment motions listed in Tenn. R. App. P. 4(b) and Tenn. R. Civ. P. 59.01 is timely filed, the time for filing the notice of appeal will run from the date of the order granting or denying the motion." *Barnes v. Barnes*, No. M2012-02085-COA-R3-CV, 2014 WL 1413931, at *3 (Tenn. Ct. App. Apr. 10, 2014).

Therefore, the timely filing of a Tenn. R. Civ. P. 59.04 motion to alter or amend tolls the thirty-day time limit for filing a notice of appeal until the trial court grants or denies the motion. *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004). Nevertheless, as Metro correctly states, a party may not file successive or serial post-trial motions on substantially the same grounds in an attempt to further extend the time for filing a notice of appeal. Tenn. R. Civ. P. 59.01, Adv. Comm'n Cmt.; *Barnes*, 2014 WL 1413931, at *3 (citing *Albert*, 145 S.W.3d at 528) (other citations omitted). However, the time may be extended again if an adverse party subsequently files a Tenn. R. Civ. P. 59.04 motion to alter or amend a judgment that was amended in response to another party's motion to alter or amend. *Barnes*, 2014 WL 1413931, at *3 (citing *Albert*, 145 S.W.3d at 528) (other citations omitted).

---

[5] An exception to this rule is when the trial court expressly declares that an order constitutes a final judgment for purposes of appeal under Tenn. R. Civ. P. 54.02, which reads:

> When more than one claim for relief is present in an action, . . .the court, . . . may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

In this case, the first order granting summary judgment to Metro was entered on May 26, 2016.[6] Because the order disposed of all pending claims, it constituted a final judgment from which RSF had the right to appeal. *See In re Estate of Henderson*, 121 S.W.3d at 645 (A "final judgment" is a judgment that resolves all claims between all parties, "leaving nothing else for the trial court to do."); *see also* Tenn. R. App. P. 3(a) (A party is entitled to an appeal as of right after the trial court has entered a "final judgment."). As a consequence, RSF could have appealed the May order. Instead of appealing, RSF timely filed a Rule 59.04 motion to alter or amend, which tolled the thirty-day time limit for filing a notice of appeal until the trial court ruled on the motion.

On July 22, 2016, the trial court entered a second order granting summary judgment in favor of Metro; however, the relief granted was different from the May order and, significantly, the order did not set aside or supersede the May 26 order.[7] Immediately after the trial court entered the July 22 order, Metro filed a motion for mandatory and permanent injunction.[8] Although Metro did not identify the motion as a Rule 59.04 motion to alter or amend, we look to "the substance of the motion rather than its form" to determine whether it fits the criteria of a post-judgment motion that will extend the deadline for appeal. *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998). As noted in *Farmer*, this rule was applied in *Bemis Co. Inc. v. Hines*, 585 S.W.2d 574, 575 (Tenn. 1979) and in *Hawkins v. Hawkins*, 883 S.W.2d 622, 624 (Tenn. App. 1994). *Id.* In *Bemis*, 585 S.W. 2d at 575, the plaintiff filed a written "Motion to Set Aside Decree and Restore the Cause to the Docket." Although commenting that "neither the title nor the format of the motion bears a striking resemblance to the usual motion for new trial," the appellate court found it to be "clearly ascertainable from a reading of the motion that, in substance, . . ." it was a motion for a new trial. *Id.* In *Hawkins*, 883 S.W.2d at 624, the plaintiff filed a written post-trial motion designated as a "Motion to Reconsider." On appeal we determined "[t]hough she called it a motion to reconsider, 'it is clearly ascertainable from a reading of the motion that, in substance,' it amounts to a motion to alter." *Id.* (quoting *Bemis*, 585 S.W.2d at 575).

If we only consider the title of Metro's motion, it would not fit the criteria of a Rule 59.04 motion; however, having considered the substance of its post-trial motion, it

---

[6] The May 26 order was prepared by Metro as instructed by the court at the conclusion of the hearing.

[7] The order that was entered on July 22 was submitted by RSF shortly after RSF learned that the court had signed and entered the May 26 order submitted by Metro. The confusion appears to have resulted from the fact that the trial court failed to "hold" Metro's proposed order for three days, as required by Rule 15.03 of the Local Rules of the Davidson County Trial Courts to afford RSF time to notify the court if it disagreed with the contents of the order prepared by Metro.

[8] The trial court had not yet ruled on RSF's motion to alter or amend when Metro filed its motion.

is apparent that Metro sought to alter or amend the July order for the purpose of restoring the injunctive relief that had been removed as a result of RSF's first Rule 59.04 motion to alter or amend. Thus, it is evident that Metro's post-trial motion was, in fact, a motion to alter or amend that tolled the running of the time in which to file a notice of appeal. *See* Tenn. R. Civ. P. 59.01.

After Metro filed the motion discussed immediately above, the trial court entered a third order that ruled on RSF's motion to alter or amend and resolved the inconsistent relief awarded in the prior orders. The order, which was entered on August 4, 2016, is significant for three reasons. First, it reveals that the trial court had not previously ruled on RSF's first motion to alter or amend. This is evident because the preamble in the order states, "This cause came to be heard . . . on [RSF]'s Motion to Alter or Amend Order following summary judgment."[9] Second, the August order stated that "the Order entered by the Court on May 26, 2016 is set aside and the Order [prepared by RSF and entered on July 22, 2016] will be entered by the Court."[10]

The August order is also significant because it expressly states that "[a]ll other issues raised in [RSF's] Motion are reserved." A final judgment is a judgment that resolves all the claims between all the parties, "leaving nothing else for the trial court to do." *In re Estate of Henderson*, 121 S.W.3d at 645 (quoting *McAllister*, 968 S.W.2d at 840). Although we do not know which issues were reserved, the court's statement makes it clear the August order did not resolve all claims or issues. As a consequence, the August order was not a final judgment from which an appeal as of right could be taken. *See* Tenn. R. App. P. 3(a).

An order that adjudicates fewer than all the claims between all the parties is subject to revision at any time before the entry of a final judgment and is not appealable as of right. *Id.*; *In re Estate of Henderson*, 121 S.W.3d at 645. Because the August order did not dispose of all claims or issues, it was not a final judgment from which an appeal as of right could be taken. Therefore, the August order did not start the clock on the time to file a notice of appeal. *See* Tenn. R. App. P. 4(a).

Our determination that a final judgment had not been entered is also supported by the transcript from the September hearing on the "remaining issues before [the trial]

---

[9] We can only surmise that the July order was approved and entered inadvertently or prematurely because, as the August order reveals, RSF's motion to alter or amend had not been heard.

[10] The opening paragraph of the August 4, 2016 order stated "This cause came to be heard . . . on [RSF]'s Motion to Alter or Amend Order following summary judgment." It appears this order was necessary due to the inconsistent relief awarded to Metro in the "final orders" that had been entered on May 26 and July 22, respectively.

court." The following exchange occurred between Mr. Meisner, counsel for RSF, Mr. Bradley, counsel for Metro, and the court:

> Mr. Meisner: So, Your Honor, just so we're still clear and we don't need to come back. We've been doing these gymnastics about whether this is a final order or not. We have not yet resolved what relief Your Honor is going to grant and we could have done that now if Metro had not stricken their motion….
>
> Mr. Bradley: … As we said in the notice striking our motion for permanent injunction, we'll go through contempt proceedings if we need to. We feel like we can do that. And that does not preclude this from being a final order.
>
> Mr. Meisner: So, you're asking the Court to certify this as a final order?
>
> Mr. Bradley: Absolutely.
>
> Mr. Meisner: I have no objection, Your Honor.
>
> Mr. Bradley: I don't think he needs to. I think it's a final order.
>
> The Court: This is the final order of the Court.

The trial court expressly stated at the end of the order dated September 29, 2016 that "[t]his matter is now final as there are no remaining issues before this court." Therefore, the order entered on September 29, 2016 constituted the trial court's final judgment. Since RSF filed its notice of appeal within thirty days of the entry of that order, the notice of appeal was timely filed. *See* Tenn. R. App. P. 4(a). As a consequence, we have jurisdiction to hear this case.

## II. JURISDICTION OF THE COMMISSION

RSF contends the Commission has no authority to regulate the installation of glass or plastic panels within the interior of its building because the Commission's jurisdiction is restricted to the exterior design elements of the buildings situated within the Broadway Historic Preservation District. Metro insists the Commission has the authority to regulate the panels. It also insists that the exclusive means for RSF to challenge the Commission's final order was through a petition for a statutory writ of certiorari and, because RSF failed to file a petition for certiorari, it is barred from challenging the Commission's authority to

regulate the installation. In other words, Metro insists this appeal constitutes an impermissible collateral attack on the Commission's final order; therefore, the appeal should be dismissed. We have determined that a collateral attack on jurisdictional grounds is permissible, and that RSF presents a jurisdictional challenge. Nevertheless, RSF's challenge must fail because the Commission had the authority to regulate the panels at issue.

Tenn. Code Ann. § 13-7-409 states that anyone who may be aggrieved by a final order of the historic zoning commission must challenge the decision through a statutory certiorari procedure. Tenn. Code Ann. § 27-9-102 provides that a party shall file his or her petition of certiorari within sixty days from the entry of the order or judgment. RSF did not appeal the Commission's decision through the statutory certiorari procedure. Instead, RSF is challenging the Commission's decision by denying its force and effect in this matter, which is an incidental enforcement proceeding.

A collateral attack on a judgment differs from a direct attack. *Turner v. Bell*, 279 S.W.2d 71, 75 (Tenn. 1955). A direct attack on a judgment is a challenge to a judgment through an appellate procedure such as a petition of certiorari or appeal. *Id.* To the contrary, a collateral attack is "an attempt to avoid, defeat, or evade a judgment, or to deny its force and effect, in some incidental proceedings not provided by law for the express purpose of attacking it." *Andrews v. Fifth Third Bank*, 228 S.W.3d 102, 107 (Tenn. Ct. App. 2007) (quoting 50 C.J.S. *Judgments* § 555 (1997)). A collateral attack is impermissible under the principle of res judicata. *Black v. Black*, No. W2003-01648-COA-R3-CV, 2004 WL 1563233, at *8 (Tenn. Ct. App. July 13, 2004). Res judicata is a "rule of rest" that promotes finality in litigation and conserves judicial resources. *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (quoting *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976)). This principle applies not only to the final decision of a court, but also to the final decision of an administrative board or commission. *State ex rel. Ragsdale v. Sandefur*, 389 S.W.2d 266, 271 (Tenn. 1965). The Tennessee Supreme Court has opined:

> If it can be said a voidable decision of an administrative board can be collaterally attacked in all cases by way of a defense to a suit for the enforcement of the order or decision or by suit not in the nature of a direct attack, then we fail to see how an order or decision of a board would ever become final and not subject to review by the courts….

*Id.*

Our courts do not permit collateral attacks on the final decisions of administrative boards or commissions except in limited circumstances:

Attempts to question, in a subsequent proceeding, the conclusiveness of a prior decision of an administrative agency have often been rejected by the courts on the ground that, like the judgment of a court, a determination made by an administrative agency in its judicial or quasi-judicial capacity is not subject to collateral attack, at least where the administrative agency has acted within its jurisdiction, the determination is not void upon its face, and the ground of attack asserted relates to mere error or irregularity which is not jurisdictional.

*Id.* at 272 (quoting 2 Am. Jur. 2d *Administrative Law* § 493, p. 299). However, when a judicial or quasi-judicial body lacks the authority to make the decision, the decision is void and would thus be subject to challenge in a collateral proceeding on that basis. *See Lovlace v. Copley,* 418 S.W.3d 1, 19 (Tenn. 2013).

RSF is asserting a collateral attack, which is generally not permitted. However, in this instance, RSF challenges the Commission's jurisdiction, which is an exception to the collateral attack rule. Therefore, RSF's collateral challenge on jurisdictional grounds is permitted. Nevertheless, for the reasons explained below, we have determined that the Commission had jurisdiction over the installation.

The Metropolitan Government of Nashville and Davidson County enacted separate historic zoning provisions in the Metropolitan Code of Laws "to insure the ongoing preservation of structures of historic value" to Nashville and Davidson County. M.C.L. § 17.36.100. Each historic district has a unique set of guidelines concerned primarily with regulating the exterior design elements of the buildings within the district to insure architectural compatibility. M.C.L. § 17.36.100(B); M.C.L. § 17.36.110. To promote compliance, the Metropolitan Government established an historic zoning commission (previously designated "the Commission") which is authorized to adopt a set of design guidelines appropriate for each district and the power to apply those design guidelines when considering permit applications for new construction, alterations or additions. M.C.L. § 17.40.400; M.C.L. § 17.40.410(B).

The Commission adopted The Broadway Historic Preservation District Design Guidelines (previously designated "the Historic Preservation Guidelines"), which apply to the buildings within the Broadway Historic Preservation District. It is undisputed that RSF's building is in the district. The Historic Preservation Guidelines apply not only to "the exteriors of buildings and to areas of lots visible from public rights-of-way," but also

to "*interior changes* that affect the exterior appearance of upper facades…."[11] (emphasis added).

RSF contends that the Commission only has the authority to regulate exterior design elements; therefore, the Commission cannot regulate or prohibit its installation of interior glass panels. RSF submitted the testimony of two experts, Steve DiLeo, the project manager principally responsible for the installation, and Byron Hall, the Chief Inspector for Metro Codes. Both testified that the plastic and glass panels are not affixed to the exterior of the structure. We find this evidence of little consequence because the Historic Preservation Guidelines apply to areas visible from public rights-of-way and to interior changes affecting the exterior appearance of upper facades. The photographic evidence established that the glass panels at issue are clearly visible from public rights-of-way, and the panels alter the building's exterior appearance. Thus, the Commission has the authority to regulate the installation.

### III. THE TWELVE-MONTH PERMIT

RSF contends Metro cannot rely on the permit as a basis for its enforcement action because the glass panels were installed after the twelve-month permit had expired. Metro insists the validity and enforceability of the permit did not expire twelve months after issuance. We agree with Metro.

The "Notice" provision of the permit states in pertinent part, "This permit becomes invalid TWELVE months after issue date. Expired permits must be reissued prior to work being undertaken." Reading the two sentences together, it is readily apparent that the permit does not expire unless the permittee fails to undertake or commence construction within twelve months from issuance.

RSF's permit was issued on July 22, 2010, and RSF not only commenced but completed construction within twelve months of the issuance of the permit. After requiring the removal of the plastic panels installed in violation of the permit, the Commission inspected and approved the work on July 26, 2011. Therefore, the permit did not expire and the Commission had the right to enforce the permit.

### IV. DID RSF VIOLATE THE PERMIT?

RSF contends the trial court erred in finding, as a matter of undisputed fact, that the glass panels it installed on the interior of the second-floor constituted "enclosures" which violated the permit. Metro contends that no material facts were in dispute and that

---

[11] The Historic Preservation Guidelines specifically state: "Interior changes that affect the exterior appearance of upper facades including changing original floor levels should be avoided."

the trial court correctly granted summary judgment in its favor. We are in agreement with Metro's contention.

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id*.; *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id*. Instead, the nonmoving party must respond with specific facts showing that there is a genuine issue for trial. *Id*. A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id*.

At the July meeting, RSF's attorney requested permission to install drop-down plastic panels "inside the canopy frame" to use during inclement weather. The Commission rejected that request and prohibited RSF from enclosing the canopy or openings without review from the Commission. At that meeting, the Commission made it clear to RSF exactly what the permit prohibited. RSF then did exactly what the Commission told it not to do—it installed drop down plastic panels inside the canopy frame without the Commission's approval. When the Commission objected to the plastic panels, RSF immediately removed them. Thereafter, the Commission inspected the building and found it in compliance with the permit. RSF now seeks to challenge the Commission's efforts to enforce the prohibitive provision in the permit when the only difference is that the "curtains" or panels are made of glass instead of plastic.

As previously stated, the historic zoning provisions in the Metropolitan Code of Laws gives the Commission the power to adopt a set of design guidelines appropriate for each district and the power to apply the design guidelines when considering permit applications for new construction, alterations or additions. M.C.L. § 17.40.410(B). The permit expressly states, "The canopy and/or the openings shall not be enclosed without review and permit from the [Commission]." Though the Historic Preservation Guidelines do not define "enclosed," such a definition is unnecessary in this case.

We acknowledge there is evidence in the record concerning the definitions of "enclosed" in the context of the construction trade and by other sections of the Metropolitan Code; however, those definitions are not relevant to the matter at issue. The historic zoning provisions in the Metro Code are concerned with maintaining a specific design aesthetic in the historic districts, and neither Mr. DiLeo nor Mr. Hall claims any expertise in that area. More importantly, Mr. Hall testified that Metro Codes enforcement pertained to "structure," but did not pertain to a building's compliance with historic zoning requirements. Thus, the evidence RSF relied upon was neither relevant nor material to whether the glass panels violated the permit.

The Commission regulates the exterior appearance of the buildings within the district as well as interior changes affecting a building's exterior appearance. The permit expressly prohibits enclosing the canopy and/or the openings without review and permit from the Commission. The Commission did not review or permit the installation of glass panels. The photographic evidence submitted to the trial court unequivocally establishes that the glass panels installed by RSF appear to enclose "[t]he canopy and/or the openings." Therefore, RSF's installation of the glass panels violates the preservation permit.

Accordingly, we affirm the trial court's decision to grant summary judgment in favor of Metro.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against RSF Investors, LLC.

_____
FRANK G. CLEMENT JR., P.J., M.S.